## FIDELITY & DEPOSIT CO. OF MARYLAND v. FORT WORTH NAT. BANK.

### No. 1712—6247.

Commission of Appeals of Texas, Section A.
Nov. 28, 1933.

Albert B. Hall, of Dallas, for plaintiff in error.

Bryan, Stone, Wade & Agerton and Brandon Stone, all of Fort Worth, for defendant in error.

CRITZ, Judge.

The facts of this case are undisputed; only law questions being presented.

Phillip G. Wade was an employee of Toledo Scale Company. Wade came into possession of certain checks belonging and payable to the scale company. He had no authority to indorse such checks, or to do anything with them except send them to the scale company, and the scale company had never done anything to lead any one to believe to the contrary. Some of these checks were drawn on Fort Worth National Bank, and some on other banks. Wade took all such checks to the Fort Worth National Bank, and after indorsing them, "Toledo Scale Company, Fort Worth, per Phillip G. Wade, Mgr.," delivered them to such bank. The Fort Worth National Bank took such checks, by its transactions with Wade, and paid him the proceeds thereof. As to the checks drawn on it, the bank charged the respective accounts of the makers with the amounts thereof and returned the checks to the makers. As to the checks drawn on other banks, the Fort Worth National Bank collected the amounts thereof from such other banks, and surrendered the checks to such drawee banks, who, in turn, charged the respective makers with the amounts thereof, and surrendered such checks to the makers. It appears that the aggregate amount of the checks drawn on the Fort Worth National Bank was $475.25. The aggregate amount of the checks drawn on other banks was $616.23. Wade. absconded, and never accounted to the scale company for the proceeds of such checks.

It further appears that the Fidelity & Deposit Company of Maryland had executed a bond in favor of the Toledo Scale Company whereby it agreed to pay to the scale company to the extent of $1,000 any loss sustained by it on account of the wrongful acts of Wade. The Fidelity & Deposit Company of Maryland paid the scale company $1,000, the amount of the bond. In consideration of such payment, the Toledo Scale Company transferred and assigned to the Fidelity & Deposit Company of Maryland all its rights against all of the banks involved.

We shall hereafter refer to the Fort Worth National Bank as the Fort Worth Bank, to the Fidelity & Deposit Company of Maryland as the Fidelity Company, and to the other banks by that term.

The Fidelity Company, after the transactions above detailed, filed suit in the district court of Tarrant county, Tex., against the Fort Worth Bank to recover the total amount of the checks involved, with 6 per cent. interest from June 30, 1927. This was the date the Fidelity Company took its assignment from the Toledo Scale Company, and paid it the $1,000. The basis of the suit was the facts above alleged.

The case was tried in the district court without a jury, and resulted in a judgment for the Fidelity Company as to all the checks. On appeal by the Forth Worth Bank to the

Court of Civil Appeals at Fort Worth, this judgment was reversed, and judgment rendered for the bank as to all the checks. 48 S.W.(2d) 694. The Fidelity Company brings error.

A reading of the opinion of the Court of Civil Appeals demonstrates that it treated the two classes of checks as the same, and held that the Fidelity Company could not recover from the Fort Worth Bank because its assignor, the Toledo Company, the payee in the checks, had no cause of action against such bank.

As already shown, this suit involves two classes of checks, which are:

(a) The checks drawn directly on the Fort Worth Bank, and cashed by it on forged indorsements.

(b) The checks drawn on other banks but cashed by the Fort Worth Bank on forged indorsements, and then collected by the Fort Worth Bank from the other banks.

We shall proceed to decide the liability of the Fort Worth Bank, treating each class of checks separately. We shall first discuss the case as applied to the checks drawn directly on the Fort Worth Bank.

Before the enactment of the Uniform Negotiable Instrument Act by many of the states, the authorities sharply conflicted on the question of the liability of a drawee bank to the payee or legal owner of a check paid upon a forged or fraudulent indorsement. Some authorities sustained the recovery, while others denied it.

The leading authority sustaining such recovery was the opinion of Justice Lurton, while a member of the Supreme Court of Tennessee, in the case of Pickle v. Muse, 88 Tenn. 380, 12 S. W. 919, 920, 7 L. R. A. 93, 17 Am. St. Rep. 900. The leading authority denying such recovery was the case of First National Bank v. Whitman, by the Supreme Court of the United States, 94 U. S. 343, 24 L. Ed. 229. In this connection it appears that prior to the adoption of the Negotiable Instrument Act by this state one of our Courts of Civil Appeals had held in accordance with the United States rule, denying such recovery. House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561. We do not find that our Supreme Court has committed itself on the question, either before or since the enactment of the Negotiable Instrument Act (Rev. St. 1925, arts. 5932–5948).

A reading of the opinion in First National Bank v. Whitman, supra, demonstrates that it denied recovery because the check did not operate as an assignment of the fund of the drawee in the absence of acceptance thereof by the bank, and because no contractual relation existed between the drawee bank and the drawee owner of the check. A reading of the opinion in Pickle v. Muse, supra, discloses that Justice Lurton recognized the rule that the action could not be maintained against the bank unless it accepted the check. In this connection he says: "We agree that the holder of a check, for want of privity, cannot recover upon the check against the bank, unless he can show an acceptance." Judge Lurton then proceeds to base his conclusion that the suit can be maintained on the theory that the bank, by cashing the check, even upon a forged instrument, accepted it.

Since the opinions in the cases above discussed were delivered, many of the states, including Texas, have enacted what is generally known as the Uniform Negotiable Instrument Act. In those jurisdictions which have enacted such law, the great weight of authority based on the law itself, is to the effect that the action here under discussion will not lie. Michie on Banks and Banking, vol. 5, p. 521. Also see authorities cited under note 76, pp. 521, 522 and 523, same authority. This rule is based on the plain provisions of the act itself. These provisions are: Article 5947, §§ 185 and 189; article 5941, § 132; article 5948, part of section 191. These statutes read as follows:

Article 5947:

"Sec. 185. A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

"Sec. 189. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Article 5941:

"Sec. 132. The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Article 5948:

"Sec. 191. In this Act, unless the context otherwise requires:

" 'Acceptance' means an acceptance completed by delivery or notification."

After the enactment of the Negotiable Instrument Act by this state, the very question here involved reached the Court of Civil Appeals at Amarillo in Lone Star Trucking Co. v. City National Bank of Commerce, 240 S. W. 1000, and the late Judge Boyce speaking for that court exhaustively reviewed the opinions in Pickle v. Muse, supra, and First National Bank v. Whitman, supra, and demonstrated that under both opinions there could be no action against the drawee bank by the drawee owner of a check unless and until the bank accepted the check. Judge Boyce then demonstrates that under the one

authority the check was held to have been accepted, while under the other the contrary was held.

In our opinion the statutes above quoted leave no room for construction on the question under discussion here. Under section 185 a check is a bill of exchange. Under section 189, art. 5947, a check of itself does not operate as an assignment of the fund to the credit of the drawer with the bank, and the bank is not liable to the holder "unless and until it accepts or certifies the check." Under section 132, acceptance of a check is the siginficance by the drawee bank of its assent to the order of the drawer, and this acceptance "must be in writing and signed by the drawee." Under section 191, art. 5948, "acceptance" means an acceptance completed by delivery or notification.

■ When we come to consider the case at bar, in so far as the checks drawn on the Fort Worth Bank are concerned, we find that under the plain terms of the statutes above quoted, these checks are bills of exchange; they do not operate to assign the several funds of the drawers; and they were never accepted by the bank in the manner and way prescribed by the statute. It follows that the Toledo Scale Company could not have maintained an action on such checks against the Fort Worth Bank. Of course if it could not do so, its assignee, the Fidelity Company, could not do so. In this connection we think the very terms of the statutes have operated to give direct legislative sanction to the rule announced by the United States Supreme Court in First Nat. Bank v. Whitman, supra. 6 Tex. Jur. p. 309, § 161; First National Bank of Winnsboro v. First National Bank of Quitman (Tex. Com. App.) 299 S. W. 856; Biglow on Bills, Notes and Checks (3d Ed.) p. 144, § 208; Brannan's Negotiable Instrument Law (4th Ed.) p. 907; Harvard Law Review, vol. 38, p. 877 et seq.

We are aware that the above holding is in seeming conflict with the holdings of the Court of Civil Appeals at San Antonio in the cases of City National Bank & Trust Co. v. Pyramid Asbestos & Roofing Co., 39 S.W.(2d) 1101, and Pierce Pet. Corp. v. Guaranty Bond State Bank, 22 S.W.(2d) 520; but in our opinion the conflict should be resolved in favor of the holding of the Court of Civil Appeals in the case at bar, and the holding of the Court of Civil Appeals in the Lone Star Trucking Case, supra. In fact, we think the statutes above quoted admit of no other conclusion.

■■ We now come to decide the liability of the Fort Worth Bank on the checks drawn on other banks, but cashed by the Fort Worth Bank on Wade's forged indorsements. In our opinion this part of the case presents a different question from the part of the case based on the checks drawn directly on the Fort Worth Bank.

Though there is some authority to the contrary, the great weight is on the side which holds that a collecting bank which accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery. Michie on Banks and Banking, pp. 522, 523, and 524. See, also, annotations under note 79, p. 524, same authority. Of course, the right of the payee or rightful owner to recover on this class of checks from the collecting bank is conditioned on the absence of any fault or laches on his part, and on the absence of a ratification of the forged or unauthorized indorsement by him. No such questions are involved in this case.

■ The Fort Worth Bank earnestly contends that the cause of action here asserted by the Fidelity Company is barred by the two-year statute of limitation (Rev. St. 1925, art. 5526). We overrule such contention. It appears from the record that the original petition was filed in the district court within two years after the commission of the wrongful acts here complained of. Later and more than two years after such acts, the Fidelity Company filed an amended petition. The amended petition does not attempt to change the cause of action or to set up a new cause of action, but merely amplifies the same, and goes more into detail. We think that the law is settled that an amended petition which merely changes the form of the action or amplifies the same will not open the case to the bar of the statute of limitations, if the cause of action is not changed. Cotter v. Parks, 80 Tex. 539, 16 S. W. 307; 37 C. J. p. 1079, § 518.

We recommend that the judgments of the Court of Civil Appeals and district court be both reversed and set aside, and judgment here rendered as follows:

(a) That the Fort Worth National Bank take judgment decreeing that the Fidelity & Deposit Company of Maryland take nothing as to that part of its suit based on the checks drawn directly on such bank.

(b) That the Fidelity & Deposit Company of Maryland have judgment against the Fort Worth National Bank for the amount of the checks drawn on other banks, and cashed by the Fort Worth National Bank, with interest at 6 per cent. from June 30, 1927, to this date, and that said judgment bear interest from date until paid at the rate of 6 per cent. per annum.

(c) That the Fort Worth National Bank pay all costs in the district court, and in the Supreme Court, and the Fidelity & Deposit Company of Maryland pay all costs in the Court of Civil Appeals.

CURETON, Chief Justice.

Judgment of the district court and Court of Civil Appeals are both reversed, and judgment is here rendered as recommended by the Commission of Appeals.