**REPUBLIC NAT. BANK OF DALLAS et al.**
**v. MARYLAND CASUALTY CO. et al.**

No. 4367.

Court of Civil Appeals of Texas. El Paso.

June 8, 1944.

Rehearing Denied June 29, 1944.

Eugene DeBogory, Coke & Coke, Thomas G. Murnane, and Webster Atwell, all of Dallas, for appellants.

A. B. Hall, of Dallas, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of one of the District Courts exercising jurisdiction in Dallas County. Plaintiffs, Maryland Casualty Company and Fidelity and Deposit Company of Maryland, as assignees of the Gulf Insurance Company, the National Bank of Commerce of Dallas, and Dallas National Bank, sued as defendants Republic National Bank of Dallas, First National Bank in Dallas and Mrs. Dorothy Belle Coffey. Trial was before the court and a jury. At the close of the evidence plaintiffs made motion for an instructed verdict against the defendants Mrs. Coffey and Republic National Bank for the sum of $9,408.75, with interest, and against the defendants Mrs. Coffey and First National Bank in Dallas in the sum of $1,923.85, with interest. The defendants, other than Mrs. Coffey, likewise moved for an instructed verdict in their favor. The court being of the opinion that there was no issue to submit to the jury, discharged same and considered the motions. Defendants excepted to the action of the court in discharging the jury. Plaintiffs' motion was sustained and judgment entered in accordance therewith. Republic National Bank was given judgment over against Titche-Goettinger for the amount recovered by plaintiffs against it, and so was the First National Bank. The defendants have duly perfected this appeal.

For convenience herein, plaintiffs below will sometimes be designated as such; the Gulf Insurance Company as "Gulf" or "Drawer"; the National Bank of Commerce as "Drawee," as also will be Dallas National Bank; Titche-Goettinger as "Second Endorser" or "Titche"; Republic National Bank of Dallas as "Third Endorser" or "Republic"; First National Bank in Dallas likewise as "Third Endorser" or "First National"; defendant Mrs. Coffey will be designated by name.

It is thought that a statement of the pleadings is unnecessary. Suffice it to say that all questions discussed were raised by the pleadings of the parties, and if it becomes necessary the pleadings will be stated in connection with the issues discussed.

Gulf, an insurance company, having offices in the City of Dallas, between March 5, 1938 and January 17, 1941, issued some 109 checks payable to the order of various named persons. Part of these checks were drawn on the National Bank of Commerce and part on Dallas National Bank. At all relevant times Gulf had on deposit funds in each of said banks more than sufficient to meet said checks. To none of the payees named in any of the checks was the Gulf indebted in any sum.

Defendant Mrs. Coffey was an employee of Gulf in the Claims Department. She was not authorized to execute checks. It was her duty to examine claims which had been allowed by the proper officers and employees of the Company and requisition checks therefor and when executed deliver or send same to the payees thereof.

In the case of the checks here involved Mrs. Coffey falsely represented to the officers charged with the duty of executing checks that each party named as a payee in each check had a valid and allowed claim against the Company. Each of the officers executing these checks executed same with the purpose and intention of paying to the named payee what was thought to be a valid debt of the Company. After each check was so executed, it was delivered to Mrs. Coffey for the purpose of delivery to or to be mailed to the named payee.

.The evidence is that Mrs. Coffey took each of these checks to the place of business of Titche, forged the endorsement of the named payee and that that concern gave her cash therefor. Titche from time to time endorsed such checks in blank and deposited same, some with the Republic National Bank and some with the First National Bank. Each of said banks was a member of the Dallas Clearing House and presented such checks through that agency to the drawee bank, stamping each of said checks in a manner under the constitution and rules of the Clearing House to indicate a guarantee of all prior endorsements. The respective drawee banks paid the checks and charged same to the account of the Gulf with it. The drawee banks would each send to the Gulf at the end of each month the checks cashed for it during that month and which were charged to the Gulf's account.

Sometime in April, 1941, the Gulf discovered that it had been defrauded through the agency of its employee Mrs. Coffey. Upon this discovery the drawee banks were notified. Gulf had with one of the plaintiffs a policy insuring the fidelity of each of its employees in the sum of $5,000, with the other a policy indemnifying it against forgery to the extent of $25,000. Claim was made by Gulf on each of said policies.

The plaintiffs paid to Gulf the total amount represented by the said checks. The Gulf and the drawee banks contemporaneously with said payment each executed and delivered to the plaintiffs an assignment of all claims, rights and remedies each might have, respectively, against the endorsers of the checks, the assignment providing that the plaintiffs should accept whatever they might recover against the endorsers and Mrs. Coffey as satisfaction for any claims plaintiffs might have against the drawees. Plaintiffs filed this suit on September 30, 1941.

The facts as stated, we think, the trial court assumed to have been established by the proof. Of the correctness of this assumption in case of most if not all, there can be little question. There might be an issue as to the actual forgery of Mrs. Coffey, but we think not. Further, there may be some ground for the contention that it was not established beyond issue that the intention of the officers of the Gulf signing the checks for it was that they were for the benefit of the respective specified payees.

In the discussion we shall first treat the facts as narrated as established. Later we will briefly discuss as to whether, under the evidence, there were issues that should have been submitted to the jury as to the two matters last mentioned.

Appellants contend that the checks in question were each payable to a fictitious payee, hence payable to bearer. It seems to be conceded that the evidence established that the Gulf was not indebted to any of the payees at the time of the signing of the checks.

Subsection 3 of Section 9, Art. 5932, R.S.1925, governs here. Under the facts as we have narrated them, these checks were not knowingly made to a fictitious or non-existing person by the officers signing same. The knowledge of Mrs. Coffey was not the knowledge of the officers signing said checks. American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034; Jordan-Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N.E. 740, 22 L.R.A.,N.S., 250; Home Indemnity Co. v. State Bank of Fort Dodge, Iowa, 8 N.W.2d 757.

The two years' statute of limitations is urged by appellants as to all checks cashed more than two years prior to September 30, 1941. The terms of the assignment under which plaintiffs sued convey to them only the claims against the endorsers. As a matter of fact, plaintiffs' recovery was confined to the collecting banks and Mrs. Coffey.

Now a collecting bank paying a forger owes the duty to the real payee of accounting for the money collected. This liability is on an implied contract and no doubt the two years' statute of limitations would apply. Fidelity & Deposit Co. of Maryland v. Ft. Worth National Bank, Tex.Com.App., 65 S.W.2d 276.

Gulf was not the payee of these checks. It was the drawer and a third party was payee. As drawer, the endorsers owed it no duty by virtue of their endorsement. If there be any liability of the endorsers to the drawer, it is thought the two years' statute of limitations would apply as against the drawer. Also it is thought that the two years' statute of limitations would apply as to the liability of the drawee to the drawer. Such liability arises by virtue of the contract implied between bank and depositor.

In our opinion the only theory upon which the judgment entered can be sus-

tained is that by the assignment from the drawee banks plaintiffs acquired the right to enforce the liability created by the endorsers of the collecting banks to the drawee. The collecting banks guaranteed in writing the genuineness of the prior endorsements. In reliance thereon the drawees paid out their funds and charged same to the account of the drawer.

■■ In the ordinary case, the drawee bank is liable to the drawer of the check where it pays the check of its drawer depositor on a forged endorsement of the payee. There are exceptions, of course, where the negligence of the 'drawer interferes with the performance of the contract with the drawee. No such case is presented here. Drawer, it is true, failed for a long time to detect the forged endorsements, but this in no way interfered with the duty of the drawee. It was not charged with the duty of determining the genuineness of the endorsements. Liberty State Bank v. Guardian Savings & Loan Ass'n, 127 Tex. 311, 94 S.W.2d 133.

■ Plaintiffs rely on assignments from the drawee banks. There is no question that the drawee banks would not have executed the assignment but for the release of their respective liability to the drawer. This was the consideration of the assignments, payments of plaintiffs to the drawer made it whole. Plaintiffs may have been legally bound to make these payments to the drawer, but they were not legally bound to the drawee to so make such payments.

It is contended that the payments made to the drawer by plaintiffs constitute a satisfaction by Mrs. Coffey of the claims of the drawer against the drawee. Further, that same was a ratification by the drawer of her acts in respect to the checks; also that the action of Gulf in insisting upon and receiving payment from plaintiffs was an election to pursue that remedy and is binding upon plaintiffs as its assignees.

The question of whether or not the action of the drawer of the check of which there is an attempted negotiation by a forged endorsement in accepting payment from a fidelity or insurance company of the amount of the check ratifies the forgery and thereby elects to pursue its remedy against the forger and his surety and this discharges a collecting bank, seems not to have been directly passed upon by the courts of this State.

Here, this precise question is not presented. Plaintiffs claimed rights against the collecting banks by assignment from the drawee banks paying out their funds on the endorsement of the collecting banks.

There have been numerous cases where insurance companies paying losses to parties to the checks have been allowed recovery against those liable to the assured. Some of these cases were by virtue of an assignment from the assured or by virtue of subrogation of his rights. Among these are the following: Fidelity & Deposit Co. v. Ft. Worth National Bank, Tex.Com. App., 65 S.W.2d 276; Browne v. Fidelity & Deposit Co., 98 Tex. 55, 80 S.W. 593; Independence Indemnity Co. v. Republic Natl. Bank & Trust Co., Tex.Civ.App., 114 S.W.2d 1223; New Amsterdam Casualty Co. v. First Natl. Bank of Gilmer, Tex.Civ. App., 134 S.W.2d 470.

■ In the case of Fidelity & Deposit Co. v. Ft. Worth Bank, supra, the insurance company, having paid the loss of the payee whose endorsement was forged, was given a judgment against a collecting Bank. The payee assigned its rights to the insurance company. It was there said in substance that the right of the payee to recover from the collecting bank was conditioned, among other things, on the absence of a ratification of the forged endorsement; further, that laches or ratification was not in the case. In the case it was of necessity shown by the plaintiff's petition that it had paid the loss to the payee. Judgment was rendered by the Supreme Court in favor of the plaintiff. It would seem to follow that payment by the insurance company to the drawer under practically the same circumstances as here would not constitute a ratification of the forged endorsement. If collection from the insurer of the fidelity of a faithless employee constitutes a ratification of his breach of trust and an election to pursue a remedy inconsistent with the transfer to the insurer of a distinct right against another, it was present in the case discussed. In the disposition of the case the question of ratification was considered and by implication held, we think, not to have been presented.

In support of their theories as to ratification and election as to pursue an inconsistent remedy appellants cite, among other cases: United States Fidelity & Guar-

anty Co. v. Fidelity National Bank & Trust Co., 232 Mo.App. 412, 109 S.W.2d 47.

The reasoning of the opinion in the Missouri case, just referred to, tends strongly to support the position of appellants here. However, the situations were not exactly the same. There, the deduction as to the election to pursue the defaulting employee was inferred. In the case at bar there is a manifested intention to preserve the rights of the assured in behalf of the insurer. It may be that it cannot be logically said that the payments made to the assured, Gulf, were in consideration of the transfer of its causes of action to the insurer. However, the plaintiffs were not bound to the drawees to make these payments to drawer. By the assignment the Gulf was estopped to proceed against the drawees, as were likewise the plaintiffs. This agreement, in our opinion, in no way enlarges the liability of appellants. By the same token, it did not discharge their liability. None of the appellants were entitled to the benefits of the insurance carried by Gulf. It is true there was no privity between the drawer and the endorsers as to the endorsements. Privity there was between the drawees and the collecting banks by virtue of their respective endorsements. Even though the drawee banks could have defended successfully against the suit of the drawer on the ground of election of remedies, it is by no means certain that such defense was available to collecting banks as endorsers. Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409 and authorities therein cited.

In considering the Missouri case of United States Fidelity, supra, it must at all times be borne in mind, it was the drawee bank asserting the defense there. As pointed out in Borserine v. Maryland Casualty Co., supra, the law of Missouri seems to be that it would not be available to an endorser. First National Bank v. Produce Exchange Bank, 338 Mo. 91, 89 S.W.2d 33.

The liability of the drawee to the drawer and the liability of the endorsers to the drawee are separate and independent matters. American Exchange Natl. Bank v. Yorkville Bank, 122 Misc. 616, 204 N.Y.S. 621; Fallick et al. v. Amalgamated Bank of N. Y., 232 App.Div. 127, 249 N.Y.S. 238.

In our opinion, the assignments evidenced the clear intention to preserve to the plaintiffs the liability of the endorsing banks. We can see no reason why this should not be done. The release by plaintiffs of their rights against the drawees, to our minds, afforded a good and lawful consideration for the transfer by the drawees of their causes of action against the collecting banks guaranteeing the endorsement of the payees.

A drawee bank paying a check to one not having title thereto, pays out its own funds and not those of the drawer. In case of one presenting the check endorsing same in the manner the checks are here endorsed by the collecting banks, such collecting banks are liable to the drawee. American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034.

The conduct of the Gulf in exacting indemnity from its insurers for the unlawful acts of its employee was not an election and adoption of her acts. Reynolds v. Union Station Bank, 198 Mo.App. 323, 200 S.W. 711; Alexander v. Harris, Tex.Civ. App., 254 S.W. 146, writ refused.

The mere fact that the drawee bank has not cancelled its charge to the account of Gulf with the amount of these checks is not conclusive. It satisfied its liability to Gulf when it transferred its rights against the collecting banks to Gulf's assignee.

The case of Home Indemnity Co. v. State Bank of Ft. Dodge, Iowa, 8 N.W.2d 757, although not presenting the identical issue presented here, in that it was the liability of a collecting bank to the drawer of the check, is very much in point here. It discusses at great length and with copious citation of authorities nearly all of the contentions urged here by the appellants, save as to the sufficiency of the evidence. All discussed are disposed of contrary to the contention of appellants. This opinion is rather long but seems to us to be sound throughout.

In our opinion, in this case, if it was established that these were not bearer checks and the endorsements were forged, then the action of the trial court was correct. These checks were not on their face payable to bearer. In most instances they were payable to a named payee whose name was preceded by the title of "Mrs." In the other instances, by a name that would indicate that the payee was a woman. It is true that had the officers of the Gulf having authority to execute these checks made an investigation of its own

records, the fact that it was not indebted to the payees would have been discovered. Each under oath swore that no such examination was made. If this testimony is untrue, it would warrant the inference perhaps that they knowingly participated in defrauding their Company. It may be that these officers so testifying were interested witnesses. The fact that they testified that they thought Gulf was indebted to payees of the checks certainly is not evidence that they knew they were not. There is not the slightest circumstance indicating any dishonesty on the part of these officers. No motive is shown for them to deal dishonestly with their employer's funds. Had it have been true that these checks represented honest obligations of the Gulf, their testimony could have been easily disproved. A number of these checks were payable to admitted policy holders in the Gulf. In our opinion, the evidence, as a matter of law, established these checks were not made payable to fictitious payees. This being true, it follows that, as a matter of law, they were not checks payable to bearer.

If the checks were not bearer checks, then no one in law had the right to endorse same. By this it is not meant to be understood as holding that if Titche had taken these checks on the genuine endorsement of the named payees, it would not have been a defense. Had any of the payees in these checks endorsed and cashed same, it would have been a dishonorable and dishonest act, unless the drawer was indebted to them.

Mrs. Coffey stood on her constitutional rights and declined to testify as to any of the material facts involved in the case on the ground that her testimony might tend to incriminate her. One of the young lady cashiers for Titche testified on behalf of plaintiffs. She evidently knew the face of Mrs. Coffey, if not by name. This young lady testified that Mrs. Coffey cashed and endorsed some of the checks.

In pre-trial procedure seeking requested admission of facts, Titche replied to one of plaintiffs' requests as follows:

"This defendant denies this request for the reason that it does not know that Mrs. Dorothy Belle Coffey, known also as Billie Coffey, cashed all the checks inquired about, and said checks are in the possession of the plaintiff or should be and with respect to any of those checks upon which this defendant's endorsement appears, the same was received by it and endorsed by it relying upon the faith and credit of the Gulf Insurance Company as drawer of said check and its warranties as such drawer; and for the further reason that this defendant knew that the checks upon which its name appears as endorsee were presented to it by an employee of the Gulf Insurance Company."

Mrs. Coffey was the only employee of Gulf shown to have ever been in possession of the checks prior to the cashing of same by Titche. The employee of Titche testified that Mrs. Coffey had cashed some of the checks. Beyond the shadow of a doubt, by fraudulent misrepresentations she secured the possession of the checks.

■ The burden was not necessarily on the plaintiffs to show who forged the endorsements. A finding that same were not forged would be to presume dishonesty on the part of either the officers of Gulf executing the checks or the payees thereof. There is no evidence in the record to warrant any such inference. A finding that the endorsements were not forged would be against all the evidence.

In our opinion the holding of the trial court was correct that liability was established against appellants as a matter of law. Its judgment is affirmed.

On Motion for Rehearing.

Appellants in their joint motion for rehearing desire that the Court correct certain misstatement of facts in the opinion. If the opinion reflects statements contrary to any of the following contentions of appellants, same is corrected in accordance with the contentions of appellants:

(1) Plaintiff sued not only the collecting banks and Mrs. Coffey, but also the appellant Titche-Goettinger.

(2) The judgment rendered upon the motion for instructed verdict by the trial court was $10,515.85 against the Republic National Bank of Dallas and Mrs. Dorothy Belle Coffey, and $2,150.22 against First National Bank in Dallas and Mrs. Dorothy Belle Coffey.

(3) The assignment to the plaintiffs did not provide for any release to the drawee banks. That release was in a separate paper signed by plaintiffs and Gulf Insurance Company and delivered to the drawee banks.

On the question that the collection of indemnity insurance for the defaults of the

employee of the drawer did not constitute a ratification of her acts, we desire to cite the case of National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.2d 1027, in the Court of Civil Appeals, 17 S.W.2d 499.

While the question of ratification was neither raised nor discussed in this case, it is thought that the facts present a parallel situation.

The joint motion of appellants for rehearing is in all things overruled.