**RED BALL MOTOR FREIGHT, INC.,**
Appellant,

v.

Ann Bernard BAILEY et al., Appellees.

No. 6928.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 7, 1959.

Rehearing Denied Jan. 4, 1960.

Curtis White and John Fox Holt, Dallas, for appellant.

Leachman, Gardere, Akin & Porter, Dallas, John Stigall Jr., and John F. Maxfield,

Dallas, Carrington, Johnson & Stephens, Brundidge, Fountain, Elliott & Bateman, and Goldberg, Fonville, Gump & Strauss, Dallas, for appellees.

CHAPMAN, Justice.

Appellant, Red Ball Motor Freight, Inc., instituted this suit against Ann Bernard Bailey (formerly Ann Bernard Myers) and her husband, D. W. Bailey, First National Bank of Dallas, Republic National Bank of Dallas, Texas Bank and Trust Company of Dallas, Mercantile National Bank of Dallas, and Titche-Goettinger Company to recover the sum of $51,116.97 representing the total amount of 161 negotiable instruments made out by Ann Bernard Myers to fictitious persons while an employee of appellant, the endorsements to which she forged and the funds from which she collected and converted to her own use without the knowledge or consent of appellant.

For convenience and brevity and to conform to the briefs Red Ball Motor Freight, Inc., will be hereinafter referred to either as Red Ball or appellant, Ann Bernard Myers Bailey will be referred to as Mrs. Bailey, First National Bank of Dallas will be referred to as First National; Republic National Bank of Dallas will be referred to as Republic, Texas Bank and Trust Company of Dallas will be referred to as Texas Bank, Mercantile National Bank of Dallas will be referred to as Mercantile and Titche-Goettinger Company will be referred to as Titche except where the banks are referred to as collecting banks, endorsing banks or depository banks.

Texas Bank and Mercantile were sought to be held as drawees and First National, Republic and Titche were sought to be held liable on their respective endorsements of the 161 claim drafts. Upon trial to the court judgment was rendered for Red Ball against Mrs. Bailey for $51,116.97 and the recovery denied Red Ball against all other defendants. From the trial court's judgment for the four banks and Titche appellant perfected its appeal to the Court of Civil Appeals of the Fifth Supreme Judicial District at Dallas and the case was transferred to us by the Supreme Court of Texas for determination. In its first point appellant asserts error of the trial court in refusing to permit it to recover from Texas Bank the amount of money represented by those instruments drawn on it bearing forged endorsements, and collected by said "drawee bank." In its second point appellant asserts the same alleged error as to Mercantile. Its points 3 through 8 seek to invoke the no evidence, insufficient evidence and great weight and preponderance of the evidence rules which it says the trial court violated in refusing to give judgment in favor of Red Ball against the two depository banks on the 161 instruments because any agreement between it and such banks as to liability concerning such instruments was not any different than would the liability of such banks be on checks drawn on its account.

The facts are relatively simple. Mrs. Bailey, then Ann Bernard Myers, became an employee of Red Ball initially in 1936, filling different positions through the years with them until she was finally placed in charge of the Loss and Damage Claim Department sometime prior to September, 1953. The record indicates it was her duty to inspect and verify claims made for freight loss and damage and present the instruments to Mr. O. B. English, or others of Red Ball having authority to execute and sign the claim drafts to pay their losses. After obtaining the signature or signatures of proper officers or forging Mr. English's signature on the drafts and then endorsing the names of fictitious persons Mrs. Bailey negotiated them at First National, Republic and Titche. Seventy-eight of the instruments were made payable to E. D. Stevens, Bowie, Texas, and endorsed by the names E. D. Stevens and Mrs. E. D. Stevens. Sixty-seven instruments were made payable to A. L. Allen, Jasper, Texas, and endorsed by the names A. L. Allen and Mrs. A. L. Allen. Sixteen such instruments were made payable to L. S. Hardin, Longview, Texas, and endorsed by the names L. S. Hardin

and the name Mrs. A. L. Allen. The period of time covered by this fraudulent conduct on the part of Mrs. Bailey was from September 3, 1953 through November 15, 1957. Mrs. Bailey wrongfully obtained $51,116.97.

On October 5, 1953, Mrs. Bailey opened a savings account in Republic with a cash deposit in the name of Mrs. E. D. Stevens, General Delivery, Dallas, and on November 21, 1953, opened a checking account in the same bank by the same name. On May 15, 1954, she opened a savings account in First National by a $20 cash deposit in the name of Mrs. A. L. Allen, Jasper, Texas, and on December 4, 1954, she opened a checking account with the same bank in the same name by transferring $250 from her savings account. Six of the instruments made payable to L. S. Hardin were presented to Titche, for which Mrs. Bailey received full value. Titche endorsed its six. All the 161 instruments were presented to the collecting banks, First National and Republic, and endorsed by them as follows;

"Pay to the order of any bank or trust company. Prior endorsements guaranteed."

Typical of the 161 instruments is that shown in the footnote.[1]

During the times involved Red Ball had not shipped to anyone with the names and addresses used on the claim drafts and was not indebted to any such persons.

From 1942 to January 1, 1955, appellant did its banking business with Texas Bank. From January 1, 1955, through November 15, 1957, it did its banking business with Mercantile. In 50 of the instruments in the total amount of $17,440.47 Texas Bank was named as the drawee bank. The other 111 totaling $33,676.50 Mercantile was named as the drawee bank.

The record shows that prior to 1945 all loss and damage claims were paid by check. During that year while Texas Bank was

1. 

|  | Trucking Employs |
| "American | More Than 3½ Million |
| Trucking Assns. Inc. | People |

Red Ball Motor Freight, Inc.
Smiling          Service
Dallas, Texas

| Claim | D |
| Draft | No. 66495 |

Everything Americans Eat, Use, Wear, Comes
All Or Part Way By Truck

Mercantile National Bank At Dallas
Dallas, Texas

32-61
1110

Red Ball
Motor FRT $363 & 97 CTS

Pay

Date     Amount
5/22/56    363.97

To the
Order of     A. L. Allen

Red Ball Motor Freight, Inc.
/Signed O. B. English/

This Is
Motor Truck
Money

* * * America's Cities, Great And Small, Depend
On Motor Truck For Food * * *"

their depositor bank, Red Ball's accounting firm set up for them the "claim draft system," which was continued with Mercantile under an almost identical procedure when Red Ball started doing business with it. The only difference was that Texas Bank, at the time of delivery and at the request of Red Ball stamped the claim drafts "paid" while Mercantile did not. The claim draft system consisted of an arrangement by which four classes of drafts including the type of the 161 drafts here involved were drawn by Red Ball to be picked up daily by them at the bank whose name was imprinted on the draft. Each draft type had its distinct color and content. As they came to the depository banks through the various banking channels they were picked up daily by an officer or employee of appellant who came physically to the respective depository banks and paid for the drafts by checks drawn on Red Ball's deposit account. That arrangement was handled by oral agreement between the depository banks and Red Ball and it is uncontradicted that it was initiated by and at the request of the latter.

Upon receipt of such items they were taken back to the office of appellant and passed out to employees responsible for the particular type draft. The claim drafts here involved were passed to Mrs. Bailey, who, during all the period here involved, had charge of appellant's claim department with power and authority to approve the payments of claim drafts.

The question to be here determined in the first eight points of appellant is whether a banker-depositor relationship existed whereby Texas Bank and Mercantile were simply cashing checks for their customer-depositor or whether the banks were merely receiving the drafts for Red Ball, who "bought" the claim drafts each day. If the instruments are checks and the depository banks are drawees unquestionably the case of Liberty Mut. Ins. Co. v. First Nat. Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237, is applicable and the depository banks are liable to Red Ball on the 161 instruments involved.

Mr. Cole, Vice-President and Cashier of Mercantile, in testifying as to how the draft plan works said: "It is initiated by the customer apparently as a matter of convenience, * * * and involves items * * * which the customer wishes to have in his possession as rapidly as possible after issuance * * * as such items appear in the course of business they would be accumulated in the Collection Department * * *; the customer notified daily of the totals and the customers * * * would come to the bank * * * and give the bank a check for the accumulated drafts." Mr. Cole further testified:

"Q. And in all draft arrangements, the parties that comes and picks them up can determine whether or not he wants to pay them on account of the signature, can he not? A. Yes.

* * * * * *

"Q. Yes, sir, if you will; what is your practice in that regard? A. I will put it this way: That we regard ourselves not responsible for signatures, endorsements, dates, and so forth, on the drafts which Red Ball picks up and pays for.

"Q. Is it customary for Red Ball to return any items that they should not have paid? A. They have the right to do so.

"Q. They have that right, do they not? A. If they don't want to pay them.

* * * * * *

"Q. You stated they couldn't know whether the signature of the payees were genuine or not; I believe you made that statement, didn't you? A. No, I said—I said that Red Ball, in taking those items up, as far as we are concerned, they accept the responsibility for all features, which would include the signature, dates, any irregularity."

■ Under the arrangement described appellant insists the instruments here in-

volved are checks and Red Ball is entitled to recover under the authority of the Liberty Mut. Ins. Co. case above cited. We do not believe the record in this case brings it within the application of the Liberty Mut. Ins. Co. case [151 Tex. 12, 245 S.W.2d 243] in view of the fact that case, among other pronouncements, held, "Depositor's loss occurred only when Bank charged the checks against depositor's account without legal right to do so and in breach of its contract." Clearly, in our case the claim drafts were not charged against the depositor's account except in those rare instances where mistakes were made, and those drafts were "bought" back by Red Ball the next day. *The only instruments charged to Red Ball's account were the checks that paid for the claim drafts each day.* (Emphasis added.) Thus, we believe Red Ball by its special arrangement with the depository banks was both a drawer and drawee of the instruments here involved, such instruments were "through" items, and Texas Bank and Mercantile were simply agents for Red Ball. Tyler Bank & Trust Co. v. Saunders, Tex., 317 S.W.2d 37.

Also in Fidelity & Deposit Co. of Maryland v. Union Trust Co. of Rochester, New York, 129 F.2d 1006, 1008, a Second Circuit case with facts substantially the same as ours that court said:

> "The reasonable inference from the practice of Chemical (Texas Bank and Mercantile in our case) to pay drafts only when approved by London and when reimbursed is that it acted only as a disbursing agent whose rights as drawee passed to London when the latter paid for the draft. London acquired no claim against Chemical and was in effect the drawee or payor of the draft in spite of the fact that the instrument was addressed to Chemical."

Cases from other jurisdictions which we believe support the proposition that there was not a banker-depositor relationship in our case and that so far as the claim drafts are concerned Texas Bank and Mercantile were only agents for Red Ball are Insurance Co. of North America v. Fourth Nat. Bank of Atlanta, 5 Cir., 28 F.2d 933; Popkin v. Gilmour, 178 Misc. 1074, 37 N.Y.S. 2d 747; Central Trust Co. of Cincinnati v. Eureka-Security Fire & Marine Ins. Co., 50 Ohio App. 308, 198 N.E. 62; Armour v. Greene County State Bank, 7 Cir., 112 F. 631.

█ No findings of fact or conclusions of law were requested or filed. We presume, therefore, that the trial court resolved in Texas Bank and Mercantile's favor every issue of fact raised by the evidence, and must view the evidence in the light most favorable to such findings, disregarding all that is contrary thereto. McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643; North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795. It is true that appellant raised the great weight and preponderance of evidence rule but this case having been tried to the court and no findings of fact and conclusions of law having been made the rules announced in the cases just cited are the applicable rules.

Applying these principles to our case it is our opinion that Red Ball and the depository banks had an understanding that with the adoption of the "claim draft" system, initiated at the request of Red Ball, the check system of paying claims terminated and Red Ball thereafter "bought" and paid for the claim drafts. To say the least such understanding was implied through their actions and conduct in dealing with each other on the claim drafts. " 'The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct' * * * 'words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise.' " Texas & N. O. Ry. Co. v. New, Tex.Civ.App., 95 S.W.2d 170, 175, (writ dismissed). Stated in another way the Austin Court has said: "* * * it now seems clear that the only distinction between express contracts and contracts implied in fact is in the character of proof required to show how mutual assent is

manifested. The determining factor therefore is whether such agreement is made, not how it is arrived at." Ricks v. Smith, Tex.Civ.App., 204 S.W.2d 12, 14.

Appellant's points 9 through 14 assert, from different approaches, error of the trial court in refusing it recovery on the endorsements of the collecting banks and Titche, the genuineness of which it insists those three appellees guaranteed in writing. By appropriate counterpoints Republic and First National argue the trial court was correct because Red Ball had no privity of contract with them and hence no right of action on the restrictive endorsements.

This question has given this writer much concern because we have cases in Texas sharply conflicting. In Agricultural Ins. Co. v. North Texas Nat. Bank, Tex.Civ. App., 57 S.W.2d 229, 230, where an endorsement was almost identical to the endorsements in the case at bar, the El Paso Court said:

"The general rule as to commercial paper appears to be that a transferor warrants the signatures of all prior parties to be genuine, * * * therefore, when it appears that the signatures are forgeries, as it is admitted here, then the indorser would become liable under his warranty. But it further appears here that the North Texas National Bank did not stop at a plain indorsing of the instrument, but went further and guaranteed all prior indorsements.

"Under such a state of facts, it is our opinion that it would be liable to any person who suffered loss by reason of such indorsement."

We cannot gainsay that the case just cited did not hold endorsers liable but that opinion indicates the judgment of the trial court was actually rendered on the theory of the applicability of the equitable maxim that where one of two innocent parties must suffer, he through whose agency the loss occurs must bear it. The opinion does not indicate there was any contention by the bank that the action was not on the endorsements, which the parties seemed to have assumed.

The case just cited was decided in February, 1933. In November of that same year our Commission of Appeals in an opinion by Justice Critz in the case of Fidelity & Deposit Co. of Maryland v. Fort Worth Nat. Bank, 65 S.W.2d 276, 278, held:

"Though there is some authority to the contrary, the great weight is on the side which holds that a collecting bank which accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank *as for money had and received,* even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery." (Emphasis added.)

Since the Agriculture Ins. opinion, and the opinion of the Commission of Appeals just cited and quoted from, the El Paso court, in United States Fidelity & Guaranty Co. v. First Nat. Bank, Tex.Civ.App., 93 S.W.2d 562, 564, has said: "We feel that the holding in Fidelity & Deposit Co. of Maryland v. Fort Worth National Bank, 65 S.W.2d 276, by the Commission of Appeals, fixing the liability of a collecting bank which accepts a check on another bank on a forged indorsement to be for money had and received, is conclusive as to the nature of appellants' suit." Thus, the same court which announced the opinion in the Agriculture Insurance case later followed the authority of the Fidelity & Deposit Co. of Maryland case by the Commission of Appeals. Then in 1944 it reaffirmed that holding by saying, "It is true there was no privity between the drawer and the endorsers as to the endorsements." Republic National Bank of Dallas v. Maryland Cas-

ualty Co., Tex.Civ.App., 184 S.W.2d 496, 500.

We also have cases from other jurisdictions that limit recovery by the maker against indorsers, such as Republic and First National in our case, to action for wrongful appropriation, or for money had and received. For example, in Graton & Knight Mfg. Co. v. Redelsheimer, 28 Wash. 370, 68 P. 879, 881, the Supreme Court of the State of Washington has said:

"It is doubtless true that the respondent is liable as indorser only to the subsequent holders in due course, but the appellant's right of action is founded upon an entirely different principle. The appellant's action is founded upon the claim that the respondent received certain checks belonging to it, indorsed in its name by a person having no authority or apparent authority so to do, collected the same, and appropriated the proceeds thereof to its own use. If this be true, * * * he is responsible to the appellant therefor, and can be sued as for conversion, or *for money had and received* to the appellant's use. It can make no difference that he did not personally collect the checks from the payee. As between him and the appellant, his subsequent indorsers are but his instruments for the collection of the checks. To them he may be liable upon his contract as indorser, but to the appellant he is liable, if liable at all, as for a wrongful appropriation of its property." (Emphasis added.)

The Supreme Court of Texas has not committed itself directly on this point except in refusing a writ in the Agriculture Insurance Co. case and in following the recommendation of its Commission of Appeals in reversing and rendering the judgment of the trial court and court of civil appeals in Fidelity & Deposit Co. of Maryland v. Fort Worth National Bank, supra,

which Commission of Appeals holding was contrary to the Agriculture Insurance Co. case.

■ Though we realize the Supreme Court of Texas may not agree we believe the greater weight of authority and the better reasoning is contained in Justice Critz's opinion in the Fidelity & Deposit Co. of Maryland case, the cases following that authority, and the authorities it follows, to the effect that if the maker has a cause of action on an endorsement such as made by First National and Republic it is for money had and received and not on the endorsement itself. First National and Republic have a number of other counterpoints asserting reasons why appellant cannot recover on the endorsements in question but if we are correct in our holding it is decisive of the point and further writing would only extend this opinion to unnecessary lengths.

■ By its points 15 through 19 appellant asserts its right to recovery because of the negligence of the collecting banks in not identifying Mrs. Bailey and disclaims any negligence on its part that led to the endorsements. Republic and First National meet the points with a counterpoint to the effect that the evidence amply sustains the implied finding of the trial court that the negligence and laches of Red Ball precluded recovery by it. We believe the evidence is overwhelming that it does. The drafts in question were dated from September, 1953 through 1954, 1955, 1956 and most of the year 1957. The president of Red Ball, Mr. English, admitted that if he had checked sooner he would have discovered the very thing he did discover when some drafts got out of the office unsigned and were returned to his office for his signature. In that bunch of drafts he noticed some of the signatures did not look like his signature. He then sent for the claim files to see what supported the claim drafts and there were no claim files. Mrs. Bailey was confronted

and admitted then to all the forgeries. As to why he had not checked the claim drafts carefully enough through all those years to discover the fraud he said, "Well, I just never did do it." The evidence by both Mr. English and Red Ball's secretary, Mr. Carrell, was in substance that they had done some spot checking. Obviously it was of a most careless sort or they would have discovered some of the 161 instruments made payable to people with whom they had never had an account and with whom they had never done any business during the more than four years involved. Certainly the testimony is amply sufficient for the trial court to have impliedly found negligence and laches on appellant's part.

■ Again the law applicable to this question is stated in the Fidelity & Deposit Co. of Maryland case by Justice Critz when he said " * * * the right of the payee or rightful owner to recover on this class of checks from the collecting bank is conditioned on the absence of any fault or laches on his part, and on the absence of a ratification of the forged or unauthorized indorsement by him."

■ It is textually stated in 58 C.J.S. Money Received § 28, p. 934 that: "As a defense to an action for money had and received defendant may show such facts as will entitle him to retain the money on either legal or equitable grounds, and ordinarily he must do so. Thus he may interpose any defense which shows that in equity and good conscience plaintiff is not entitled to recover * * *".

Our Supreme Court in Staats v. Miller, 150 Tex. 581, 243 S.W.2d 686, 687, has quoted with approval from the same text as follows:

"'The question, in any action for money had and received, is to which party does the money, in equity, jus-

tice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him.' 58 C.J.S. Money Received § 4a, p. 913. Again, it has been declared that a cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which * * * belongs to the plaintiff.' United States v. Jefferson Elec. Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 449, 78 L.Ed. 859."

In Aetna Casualty & Surety Co. v. Corpus Christi Nat. Bank, Tex.Civ.App., 186 S.W.2d 840, 842, where a drawee bank paid a raised check without notice of that fact and advised the collecting bank that same had been paid, that court held concerning the endorsement:

"Under such circumstances it would be inequitable to permit the drawee bank, or any one standing in its position, to recover from the innocent collecting bank. The collecting bank reaped no benefit nor gained any advantage from the transaction. It is true that this suit is one for money paid and received, which is in form a legal action but is one which always addresses itself to the equitable consideration of the court.

"We have found no Texas case directly in point. We have been cited to the cases of City National Bank of Houston v. First National Bank of Houston, 45 Tex. 203; Marlin National Bank v. Reed, Tex.Civ.App., 164 S.W. 2d 260, but we do not consider these cases as being in point. The case which we feel sheds more light on the questions raised here than any other case is Crocker-Woolworth National

Bank v. Nevada Bank, 139 Cal. 564, 73 P. 456, 458, 63 L.R.A. 245, 96 Am.St. Rep. 169. We quote the following from that opinion:

" 'The governing principle is this: that where equally innocent persons have dealt with one another under a mistake the burden of loss resulting from the common error ordinarily will be left where the parties themselves have placed it, and so recovery can only be had where in equity and good conscience the defendant should be called upon to refund. Holly v. Missionary Society, 180 U.S. 284, 21 S.Ct. 395, 45 L.Ed. 531. * * *'

* * * * * *

"Under the facts and circumstances of the case at bar we cannot say that in equity and good conscience the collecting bank should be called upon to refund to the drawee bank or its assignee, the Aetna Casualty and Surety Company."

In the case at bar the cashing banks do not have any of Red Ball's money. They paid money to one of its employees on drafts issued by it and their trusted employee is the one who has the money, or should have it. We believe the trial court from the facts adduced had the right to find that most any investigation that could be called an investigation would have revealed the entire fraudulent scheme. Under these circumstances indulging the fiction that cashing banks have plaintiff's money would be completely inequitable instead of doing equity. Accordingly, under the facts and circumstances of our case we cannot say that in equity and good conscience First National and Republic should be required to refund to Red Ball.

Judgment of the trial court is in all things affirmed.