INTERNATIONAL INDUSTRIES, INC.

v.

ISLAND STATE BANK.

Civ. A. No. 71–C–72.

United States District Court,
S. D. Texas,
Corpus Christi Division.

Nov. 8, 1971.

Clarence N. Stevenson, and Richard D. Cullen, Victoria, Tex., for plaintiff.

Bryan W. Scott, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This legal controversy commenced when Plaintiff International Industries, Inc., being the drawer in the parlance of commercial transactions, drew four checks on Security Pacific National Bank, Valley Plaza Branch, North Hollywood, California, the drawee bank. These four checks, which totaled approximately $154,500.00, were made payable to various payees on February 24, 1970, March 12 and 15, 1970, and April 16, 1970, respectively. Thomas C. Ross. who had no legal right to the possession of the checks, took them at various times subsequent to their making and negotiated them at the Defendant, Island State Bank. Each of the checks apparently had been endorsed by a person or persons who had no authorization from the respective payees, although the endorsement of each of the checks purported to be authorized. The Defendant, Island State Bank, also referred to herein as the collecting bank, affixed to each check its stamp, which guaranteed all prior endorsements, and then transmitted the checks through banking channels to the drawee bank. The persons named as payees in the checks never received the proceeds thereof.

Plaintiff is here seeking recovery of its loss from the collecting bank, and offers two reasons why it should recover. First, it claims a right to recover from the collecting bank directly on the theories of money had and received, conversion, warranty of endorsements, contractual liability, and negligence in the failure of the collecting bank to ascertain the true identity of the endorser in each

instance. Secondly, and in the alternative, Plaintiff bases his claim for recovery on the rights acquired by virtue of an assignment to it of all of the drawee's claims against the collecting bank.

Defendant, in its original and its amended motion to dismiss, contends that the law of Texas does not give Plaintiff a direct cause of action against it on any of the above theories. Defendant urges certain other grounds in said motions, which will not be acted upon now, but rather will be carried along with the case if tried on the merits.

The major issue concerning the Court at this point is whether, under Texas law, a drawer of a check has a direct cause of action against a collecting bank upon any of the various theories that Plaintiff has espoused. In deciding this issue, the Court must necessarily determine what effect, if any, the passage of the Uniform Commercial Code has had on Texas case law. Secondarily, at issue is the impact of the assignment to the drawer by the drawee of its cause of action against the collecting bank. Orderly procedure seems to indicate the Court should consider these issues by analyzing the various theories of liability in terms of cases cited by Defendant, pre-U.C.C. Texas cases, and post-U.C.C. cases, and it will do so. The Uniform Commercial Code became effective in Texas on June 30, 1966.

■ Unaided by briefs from Plaintiff's counsel, the Court has undertaken the task of determining whether there are cases directly in point in Texas that would allow recovery by a drawer from a collecting bank on theories of conversion or implied contract or negligence. The Court has found no such cases. Furthermore, the Court finds it unnecessary to speculate concerning these particular theories of recovery, since it is of the opinion that the drawer clearly has a cause of action based on money had and received. Moreover, the modern trend in these cases appears to be more concerned with the fact of recovery than

the appropriateness of the label applied to the theory upon which recovery is based. See generally Annot., 99 A.L.R. 2d 637, 646 (1965).

The authority in Texas, at least, has been negative concerning whether the drawer may recover against the collecting bank on contractual warranties of endorsement, but, there is no dearth of pre-U.C.C. Texas authority for the proposition that a drawer may recover from a collecting bank on the basis of money had and received. For example, in Red Ball Motor Freight, Inc., v. Bailey, 332 S.W.2d 411, n. r. e. (Tex.Civ.App.1959), the Court stated:

> " . . . we believe the greater weight of authority and the better reasoning is . . . to the effect that if the maker has a cause of action on an endorsement, such as made by [collecting banks], it is for money had and received and not on the endorsement itself." Id., at 417.

Although Red Ball Motor Freight did not cite specific statutory authority, subsequent cases have relied upon the Negotiable Instruments Law. In First National Bank of Mineola v. Farmers & Merchants State Bank, 417 S.W.2d 317 at page 324, n. r. e. (Tex.Civ.App.1967), the Court considered Art. 5932, Sec. 23, Vernon's Ann.Tex.Civ.St., known at the time as the "Negotiable Instruments Act," which says, in effect, that a forged or unauthorized signature is wholly inoperative, and then the Court said:

> "By virtue of this provision, it is well established that a collecting bank does not acquire title to a forged instrument, and that it holds for the rightful owner any funds paid in satisfaction of the forged instrument. It is held that a drawer or drawee, as the case may be, may recover such funds from the collecting bank in an equitable action for money had and received."

So, it appears clear that the theory of money had and received by which a drawer may recover from a collecting bank was, at the time, founded upon Section 23 of the Negotiable Instruments Law, and that this was the law immediately prior to the enactment of the Uniform Commercial Code. In order to determine whether that decision is still valid, one must peruse the Uniform Commercial Code as it is now in effect in Texas. Section 23 of the N.I.L. has been reworded and expanded under Section 3–404 of the Uniform Commercial Code, which provides, in relevant part:

"(a) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value."

The only comment as to the pertinent part of Section 3–404 says only the "changes are intended to remove uncertainties" arising under the original Section 23, and in no way suggests any limitations on the meaning of said original Section 23 as previously established by the case law of Texas. The applicable portion of the above quoted Section 3–404 means, or so it seems to this Court, the same as the portion of the original Section 23 meant when related to a fact situation as we have here. Consequently, there is a justifiable reason to believe the Texas courts will continue their policy of allowing a recovery for money had and received by a drawer against the collecting bank.

Plaintiff further contends that it has a direct cause of action against the collecting bank on the theory of warranty of endorsement because that bank stamped all of the relevant checks guaranteeing all prior endorsements. Defendant counters this by relying on Republic National Bank of Dallas v. Maryland Casualty Co., 184 S.W.2d 496, no writ history (Tex.Civ.App.1944). There, the Court stated:

"Gulf (plaintiff) was not the payee of these checks. It was the drawer and a third party was payee. As drawer, the endorsers (collecting banks) owed it no duty by virtue of their endorsement." *Id.*, at 498.

It should be noted that this language was dictum and unsupported by citation to authority. Nevertheless, the proposition that the warranty of endorsement by a collecting bank does not operate in favor of the drawer is supported by the 1959 case of Red Ball Motor Freight, Inc., v. Bailey, supra, and more recently by First National Bank of Mineola v. Farmers & Merchants State Bank, supra. Thus, under the Negotiable Instruments Law, in Texas there has been no warranty of endorsement by a collecting bank in favor of the drawee.

Subsequent to the effective date of the Uniform Commercial Code in Texas in 1966, no Texas authority has been found to indicate whether the U.C.C. has modified this rule. However, other states have been confronted with this question, and, as one might expect, they have differed in the result. In the New York case of Low v. Merchants National Bank & Trust Co. of Syracuse, 24 A.D. 2d 322, 266 N.Y.S.2d 74, the Court was of the opinion that " . . . nothing in Article 4 of the Uniform Commercial Code . . ." [concerning bank deposits and collections] would alter the conclusion drawn under the prior Negotiable Instruments Law that there was no privity of contract between the drawer of a check and the collecting bank.

In California, although the pre-U.C.C. case of Metropolitan Life Insurance Co. v. San Francisco Bank, 58 Cal.App.2d 528, 136 P.2d 853 (1943), did not allow a drawer to recover against a collecting bank on the theory of warranty of endorsements, the subsequent cases of Allied Concord F. Corp. v. Bank of Amer.

Nat. T. & S. Assn., 275 Cal.App.2d 1, 80 Cal.Rptr. 622 (1969), and Atlas Veg. Exch., Inc., v. Bank of America Nat. T. & S. Assn., 10 Cal.App.3d 868, 89 Cal. Rptr. 274, 279–280 (1970), have said the enactment of the U.C.C. has caused such a warranty to exist.

■ Here, however, the Court is not compelled to decide whether the Texas courts will go east or west on this question, because it is of the opinion the drawee's assignment to the drawer, of its claims against the collecting bank, is valid. A cause of action based on the theory of breach of implied warranty of endorsements is clearly assignable. See E. g. Republic National Bank of Dallas, supra; see also First National Bank of Mineola, supra.

■ Defendant contends that, in this case now being considered, the assignment is not enforceable because, in effect, there is no allegation of an actual loss suffered by the drawee upon which the drawee could predicate a cause of action against the collecting bank. However, this argument cannot stand, for the Plaintiff has alleged that the payees did not receive the proceeds of the checks and that the drawee paid the amounts of the several checks totalling approximately $154,500.00 to the collecting bank, the Defendant herein. At the time of each of those payments to said Defendant, the warranty was breached and drawee's cause of action against the collecting bank accrued. United States v. First National Bank of Atlanta, Ga., 5 Cir., 441 F.2d 906, 910 (1971).

■ Defendant also alleges in its original motion to dismiss, upon information and belief, that Plaintiff corporation is a citizen of Texas. This alone is an insufficient basis for dismissal. Shahmoon Industries, Inc., v. Imperato, 3 Cir., 338 F.2d 449 (1964); Briggs v. American Flyers Airline Corp., 262 F. Supp. 16 (N.D.Okl., 1966).

Therefore, it is hereby ordered that Defendant's motion to dismiss is denied.