GUARANTY STATE BANK & TRUST CO. et al. v. LIVELY. †

(Court of Civil Appeals of Texas.  San Antonio.  June 12, 1912.  Rehearing Denied June 28, 1912.)

1. BILLS AND NOTES (§ 299*) — WRONGFUL PAYMENT OF CHECK—PROTEST.

A depositor in a bank drew a check in favor of a principal, and gave the check to one who represented himself to be agent of the payee, who was in fact a fictitious person, and the check was paid by a second bank, upon the agent's forged indorsement of the name of the fictitious payee, and the second bank indorsed the check, and the bank on which it was drawn paid it.  *Held*, that Rev. St. 1895, art. 304, providing that the holder of any bill of exchange or negotiable instrument may fix the liability of any drawer or indorser of such bill of exchange without protest or notice by instituting suit against the acceptor of such bill of exchange before the first term of the district or county court to which suit can be brought after the right of action shall accrue, does not apply.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 680–705; Dec. Dig. § 299.*]

2. BANKS AND BANKING (§ 138*)—CHECKS— FICTITIOUS PAYEE.

Where the drawer of a check knowingly makes it payable to a fictitious payee, it is considered payable to bearer; but, if a real person is intended by the name of the payee, the check must be indorsed by that person, and payment by a bank upon indorsement of some unauthorized person is not binding upon the drawer and is made at peril of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. § 138.*]

3. BANKS AND BANKING (§ 148*)—CHECKS— RIGHTS OF DEPOSITOR—INDORSEMENT.

When checks are returned to a depositor by a bank, he is not charged with notice of forged indorsements, and, when he has ascertained the genuineness of his signature and the correctness of the sum, he has the right to assume that the indorsement is genuine; the drawer not being presumed to know the signature of the payee, but the bank being required to determine that question at its peril.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

4. BANKS AND BANKING (§ 148*)—CHECKS— PAYMENT—FORGED INSTRUMENT.

Where a bank paid a check, the payee's indorsement being forged, and deducted the amount from the account of the drawer, it is liable to the drawer for the full amount.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

5. APPEAL AND ERROR (§ 758*)—BRIEFS—AS-SIGNMENTS OF ERROR.

Where an appellant's brief does not indicate the nature of a requested special charge, the refusal of which he complains, no question is presented for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. § 758.*]

6. BANKS AND BANKING (§ 149*)—PAYMENT OF FORGED CHECK.

A bank, which indorses a check containing a prior forged indorsement of a fictitious payee, is liable to the drawee bank, which has honored the check, unless the drawer knowingly drew the check in favor of the fictitious payee, thus making it payable to bearer, for by its indorsement the indorsing bank vouched for and guaranteed the payee's indorsement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 453, 454; Dec. Dig. § 149.*]

7. APPEAL AND ERROR (§ 1067*)—REVIEW— HARMLESS ERROR.

In an action by the drawer of a check against the bank on which it was drawn and which impleaded a bank which was a second indorser, where the pleadings of all parties admitted that the indorsement was a forgery and that the payee was a fictitious person, the refusal of charges placing the burden on plaintiff to prove those facts was not error; it being immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by H. Y. Lively against the American Exchange National Bank of Dallas, which impleaded the Guaranty State Bank & Trust Company and another.  There was a judgment for plaintiff against the first-named defendant and a judgment over in favor of such defendant against the impleaded defendants, and the latter appeal.  Affirmed.

Leake, Henry & Robertson and Coke, Miller & Coke, all of Dallas, for appellants.  J. L. Goggans and D. A. Eldridge, both of Dallas, for appellee.

FLY, J.  This is a suit instituted by appellee against the American Exchange Na-

tional Bank of Dallas, which, for brevity's sake, will herein be called the "National Bank," to recover $1,500 paid out by the bank on a check drawn by appellee in favor of E. Crawford. In the petition it was averred that the check was paid without authority because it had never been indorsed by E. Crawford or by his authority, and consequently the money had not been paid out as directed by the check. It was alleged that appellee was a depositor with the National Bank and had demanded the $1,500 which the bank refused, claiming that it had paid out that sum of money on a check drawn by appellee in favor of E. Crawford. The National Bank answered by general denial and specially answered that, if a check was drawn by appellee in favor of E. Crawford, and if said check was paid by the bank, it was paid to the Guaranty State Bank & Trust Company, which, with S. J. McFarland, are hereinafter called appellants, who guaranteed to the National Bank the validity of all prior indorsements, and asked that said bank and its officer, S. J. McFarland, be made parties, and, in the event judgment should be rendered against the National Bank, that it have judgment over against the said appellants.

The appellants filed a number of special exceptions to the answer and cross-bill of the National Bank and to the petition of appellee, and answered that the check was procured by one Joseph Weil from the agent of appellee, representing himself to be the agent of E. Crawford, to whom the check was payable, that Crawford was a fictitious person, but that Weil represented himself to be the agent of Crawford, which in fact was untrue, and that said Weil had indorsed the name of Crawford on the check, and the sum of $1,500 was in the due course of business paid out thereon by the State Bank, and was indorsed and presented by the State Bank to the National Bank, on which it was drawn, that the State Bank was ignorant of the forgery, and not until long after the check had been cashed was it notified that the indorsement was a forgery, at a time when Weil had fled the country, leaving no assets. It was further alleged that the appellants were only indorsers and had not been sued until many terms after the forgery was discovered, and that thereby they were released from any liability. The cause was tried by jury and resulted in a verdict and judgment in favor of appellee against the National Bank for $1,668.75, and in favor of the National Bank against the appellants for a like amount.

It was shown by the evidence that, in a transaction with one Joe Weil, appellee, through his agent, drew a check on the National Bank, where he had money on deposit, in favor of E. Crawford, who was thought by appellee's agent to be a real person, but who was in fact merely a fictitious person, the check was delivered to Weil for Craw-

ford. Weil took the check to appellants' bank and represented that E. Crawford was a cotton buyer who desired to open up an account with the bank, and presented the check with the name of E. Crawford indorsed thereon and the amount, $1,500, was put to the credit of E. Crawford, and was afterwards drawn out on checks signed E. Crawford, but really drawn by Joe Weil, who afterwards fled the county. It appeared that Weil had been engaged in a number of forgeries, and they became notorious, and on November 10, 1909, the National Bank was notified by appellee that the indorsement of the name of E. Crawford on the check was a forgery. The check was dated October 20, 1909. The agent of appellee used every means in his power to find Weil, and, as soon as he was convinced that the money had been paid on a forgery, he notified the National Bank. He did this as soon as he saw the check which had been returned as a voucher. Weil told the agent of appellee that Crawford lived in Dallas and was a cotton buyer, and was at Richardson. No such man lived in Dallas. Weil, after his departure, wrote to appellee's agent that he owed the $1,500. The circumstances tend to show that E. Crawford was a creation of Weil's for purposes of revenue only.

[1] The first assignment of error complains of the refusal of the court to instruct the jury that failure to sue at the first or second term of the court after the check had been paid had released appellants as indorsers. The law as to fixing the liability of indorsers has no application to the facts of this case. The suit required by article 304, Rev. Stats., has no application to a case in which an indorsing bank has paid a forged indorsement of a check drawn on another bank by a depositor of the latter. The suit required by the statute to fix liability is one against the acceptor of a bill of exchange or maker of a negotiable note, and could have no reference to a suit in which the paying bank is impleaded by the bank on which a check is drawn. No one was called upon to sue the drawer of the check or any one else in this instance, because no one had been hurt but the drawer. He was the man to sue and who did sue. The law has in contemplation cases in which a bill of exchange has been accepted or negotiable note made, and provides that the liability of the drawer or indorser of the bill of exchange or indorser of the note may be fixed by suit within a certain time against the acceptor of such bill of exchange or maker of the promissory note. That law has no application to the facts of this case. The law as to bringing suits under article 304 applies to the holder of any bill of exchange or promissory note assignable or negotiable by law, and has no reference in this instance to the National Bank, because it did not hold the paper, which had been paid off and which was back in possession of the drawer of it. The article in

question has reference to dishonored paper, and not to that which has been paid on a forged indorsement. The check on the National Bank was never dishonored, but was promptly paid, and of course it could not have been protested. The rule is that, where a protest is not required, the law as to time in which suit shall be brought to fix liability has no application. In such instances the debt becomes the original liability of the indorser. Wells Fargo & Co. v. Bank, 19 Tex. Civ. App. 636, 47 S. W. 1024; Will. Civ. Cases, § 396; Goddard v. Bank, 4 N. Y. 147.

The second and third assignments are overruled. The allegations in the petition objected to are sufficiently explicit. The allegations are clear to the effect that the check had not been indorsed by the payee himself or by his authority, and that as soon as he learned of it he notified the National Bank. The latter bank did not urge any exceptions to the petition. It is positively alleged that the money was demanded and that it had been paid without authority by the National Bank. There was and is no issue on that question. Appellants admit in their pleadings that the money was paid by them on the indorsement of a fictitious person, and that the National Bank paid them the amount of the check after it had been indorsed by them. The National Bank did not complain of the notice given it.

[2] It is the general rule that, when the drawer of a check makes it payable to a payee known by him to be fictitious, it is considered to be payable to bearer; but if a real person is intended by the name of the payee, the check must be indorsed by that person or by some one with authority from him, or a forgery is perpetrated in indorsing the check. Payment upon an indorsement of a check payable to a payee believed by the drawer to be a real person upon the indorsement of an unauthorized person is not a payment binding on the drawer. Such payments are at the peril of the bank, unless it can claim protection upon some principle of estoppel or by reason of some other equity.

[3] When checks are returned to a depositor by a bank, he is not charged with notice that the indorsement thereon had been forged; but, when he has ascertained the genuineness of his signature to the check and the correctness of the sum, he has performed his duty. When the check is returned to him, he has the right to assume that the indorsement is genuine. The drawer is not presumed to know the signature of the payee, but the bank must determine that question, at its peril. The points of law herein mentioned are fully and satisfactorily settled by high and thoroughly satisfactory authority. National Bank v. Traders' Bank, 119 N. Y. 195, 23 N. E. 540; Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Bank v. Whitman, 94 U. S. 347, 24 L. Ed. 229; Bank v.

Morgan, 117 U. S. 107, 6 Sup. Ct. 657, 29 L. Ed. 811. The authorities cited sustain the charges of the court assailed in the fourth, seventh, eighth, and ninth assignments of error.

In the case of Shipman v. Bank, herein cited, the facts were quite similar to those in this case, checks having been made by a depositor in favor of fictitious payees thought by the drawer to be real persons, and they were paid by the bank on a forged indorsement, and a judgment for $223,000 against the bank was sustained by the Court of Appeals of New York. In that case there is a full discussion of the law applicable to a case like the one before this court, and it is well supported by authority. Speaking of the question of negligence of the depositors in connection with the checks, the court held: "Whether the plaintiffs were guilty of any negligence in that regard was a question of fact, and the finding is that they were, so far as the defendant was concerned, reasonably prudent and careful, and that payment of the checks was not caused by any negligence on their part, and we do not think it can be said that this finding is without evidence." In that case, the forgery was committed by a trusted attorney for the plaintiff; in this, appellee had no connection with Weil, the forger of the indorsement. The question of negligence was clearly presented, in this case, to the jury, and their finding thereon is fully sustained by the facts.

[4] If the National Bank was liable to appellee in any sum, it was in the full amount for which the check was drawn, and the court did not err in charging the jury that, if a verdict was found for appellee, it should be in the sum of $1,500, with interest from December 10, 1909. This disposes of the fifth and sixth assignments of error.

[5] There is no proper statement under the tenth assignment, which complains of the refusal to give a special charge requested by appellants. What it was is not indicated in the brief, and no obligation rests upon this court to go to the record for it. However, the court did not err in refusing to instruct a verdict for appellants; but such an instruction would have been in the face of the law and the facts.

[6] Appellants by their indorsement of the check vouched for and guaranteed the indorsement of E. Crawford, and should be held liable for leading the National Bank into payment of the check. Appellants assail the diligence of appellee in notifying it, but does not attack the diligence of the National Bank to whom alone it is liable. Zane, Banks & Banking, § 155. In the case of Bank v. Bank, 91 N. Y. 74, 43 Am. Rep. 655, it was said: "The general question involved is answered by a series of decisions by this court in favor of respondent. There is no imputation on the defendant with regard to the way in which it took the check

of Kunhardt & Co., or the use made of it; but the plaintiff was thereby induced to part with its money without consideration, and the defendant, who received it, is bound to make restitution, unless the plaintiff by some act or omission of its own, has lost the right to demand or sue for it." That was a suit by one bank against another on its indorsement of a forged check.

Appellants are responsible to the National Bank because of their indorsement of a forged indorsement, and no intention of the drawer of the check, except to make the check payable to a fictitious person, thereby making it payable to bearer, could affect its liability, and the court therefore properly refused the second special charge requested by appellants. The evidence clearly showed that the actual intention of the drawer was to have the money paid to a real person, named E. Crawford, and appellants did not pay it to that real person, if he existed, but paid it to one Weil, who forged the indorsement of Crawford on the check. Appellants then indorsed that signature and obtained the money from the National Bank, and it is liable to that bank, for the same amount for which the National Bank is liable to its depositor. The eleventh and twelfth assignments of error are overruled. The authorities cited have no bearing whatever upon the errors assigned.

The thirteenth assignment of error is an abstraction, and the special charge, the refusal of which is assailed in the fourteenth assignment, is not the law applicable to the facts, and both of them are overruled. A check payable to a fictitious person is considered payable to bearer, only when the drawer knew he was fictitious; but when the payee is fictitious, but that fact was not known to the drawer, the check is not deemed payable to bearer, as is clearly indicated in the authorities hereinbefore cited. The uncontroverted evidence showed that appellee thought he was making the check payable to a real person.

[7] Appellants alleged that E. Crawford was a fictitious person, and necessarily any indorsement of the check must have been a forgery, and yet appellants complain that special charges placing the burden on appellee to prove that Crawford's name was a forgery were refused by the court. McFarland stated that appellants had never found any trace of a man named E. Crawford. The trial proceeded on the theory that E. Crawford was a fictitious person, and therefore did not indorse the check, and it did not matter on whom the burden rested to establish that fact. It was admitted by appellants in their answer that Weil represented himself to be the agent of Crawford and that it was untrue.

The conclusions of fact dispose of the remaining assignments of error unfavorably to appellants, and the judgment is affirmed.