## AGRICULTURAL INS. CO. v. NORTH TEXAS NAT. BANK et al.

### No. 2770.

Court of Civil Appeals of Texas. El Paso. Feb. 2, 1933.

Rehearing Denied Feb. 23, 1933.

Burgess, Burgess, Chrestman & Brundige, of Dallas, for appellant.

R. G. Storey, Hugh S. Grady, and E. Taylor Armstrong, all of Dallas, for appellee.

WALTHALL, Justice.

On or about September 18, 1928, George B. Ford, an insurance broker, called Thomas B. Collins, the local agent of appellant at Dallas, Tex., and asked him to write a policy on a Pierce-Arrow coupé, belonging to Joe Armour, who resided on Lakeshore drive in the city of Dallas, Tex., giving Collins a description of the car. Collins issued the policy insuring the automobile against fire in the sum of $3,000.

On October 2, 1928, Ford called Collins and advised him that the car had burned on the Fort Worth and Stephensville road. Collins made out a formal notice of loss under the policy, and forwarded it to Gross R. Scruggs & Co., general agents of appellant at Dallas, who forwarded same to appellant at Watertown, N. Y. Gross R. Scruggs, of Gross R. Scruggs & Co., assigned the investigation of the loss to H. M. Daniels of the Daniels Adjustment Company of Dallas. Daniels, it is admitted, was a local independent adjuster who had been sometimes used, during the year 1928, to adjust losses for appellant.

On October 15, 1928, E. P. Talley, an employee of a Dallas plumbing concern, forged the name of Joe Armour to a proof of loss and made oath to the facts contained therein before Margaret E. Wilson, a notary public.

Daniels made a report showing that the loss had occurred, and that a settlement could be made for the sum of $2,800.

Upon the report of Daniels and the proof of loss executed by Talley, Gross R. Scruggs issued a draft on appellant in favor of Joe Armour for $2,800, to cover the loss on the policy. Talley then forged the name of Joe Armour to the draft, and turned it over to Ford, who forged the name of his mother-in-law, Mrs. Georgia L. Maddux, thereon and deposited the draft to her credit in the North Texas National Bank. Later he withdrew the proceeds of the draft from the bank by giving checks to which he forged her name. The proceeds, after being withdrawn, were divided equally between Ford, Talley, and Daniels, the adjuster. The North Texas National Bank attached to the draft the following indorsement: "Pay to the order of any bank, banker, or trust company, October 20, 1928, prior endorsements guaranteed. North Texas National Bank, Dallas, Texas," and forwarded it through regular banking channels. It was presented to and paid by appellant.

Later the North Texas National Bank was merged with the Republic National Bank & Trust Company, who assumed all obligations of the North Texas National Bank. It appears that Ford had caused another company to issue a bona fide policy on the car to Armour, and by that means was in possession of the facts which he furnished to appellant's local agent, that Armour's car was not in fact destroyed by fire, and that the taking out of the policy and the collection thereon were the result of a conspiracy between Daniels,

the insurance adjuster, Ford, the insurance broker, and Talley to defraud appellant. It further appears that Mrs. Maddux was a depositor in the North Texas National Bank.

After the consolidation of the North Texas National Bank with the Republic National Bank & Trust Company, appellant, as plaintiff, brought this suit against both banks as defendants. In its petition it set out the facts, as above, and alleged that it was induced to pay the draft by virtue of the indorsement above quoted, and that defendants thereby became liable to it in the sum of $2,800, plus interest. In the alternative it pleaded that the North Texas National Bank, by reason of the indorsement and guaranty, and, by reason of its possession of the draft and presentation thereof, actually and impliedly represented to appellant that the draft was valuable to the extent of the amount thereof, and that it owned the legal and equitable title thereto, and thereby, by reason of said belief, induced appellant, under a mistake of fact, to pay the amount of the draft. As a further ground for relief, appellant pleaded that the North Texas National Bank was negligent in not making proper investigation of the genuineness of the indorsements on the draft, that the signature of Mrs. Maddux, a depositor of the bank, was in fact known to it, and that such negligence in failing to ascertain that said indorsements were forgeries was the proximate cause of appellant's loss.

Upon a trial before the court, judgment was rendered that appellant take nothing.

The following recital appears in the judgment of the court: "And the court, having heard the pleadings of the parties, considered the evidence and the argument of counsel, and, being of the opinion that the equitable maxim of 'where one of two innocent parties must suffer, he through whose agency the loss occurred must bear it' is applicable to the undisputed facts in this case, and operates to defeat plaintiff's claim."

Appellant in its brief contends that the facts are not such as render the maxim applicable, while appellee, on the other hand, argues to the contrary.

Appellant's pleading contains the following allegations:

"VI. The North Texas National Bank then endorsed said draft by placing on the back thereof its endorsement specifically guaranteeing all prior endorsements, which said draft, with the endorsement of the North Texas National Bank, was by said bank presented to plaintiff through regular banking channels for payment, and the plaintiff, in reliance upon the endorsement, and on the 24th of October, 1928, paid the same."

"VII. Plaintiff would show to the court that the defendant North Texas National Bank, by endorsing said draft with the endorsement aforesaid guaranteed the genuineness of all previous endorsements, including that of Joe Armour and Mrs. Georgia L. Maddux, both of which were not genuine, but were forged by said Talley and Ford, and thereupon presented the said draft to the plaintiff upon whom it was drawn and, under and by virtue of said endorsements and guarantee of all prior endorsements, induced the plaintiff to pay the said sum of Twenty-eight Hundred ($2,800.00) Dollars, and thereupon became bound and liable to plaintiff in said amount, plus interest from the said 24th day of October, 1928, the day upon which plaintiff paid said draft."

█ The general rule as to commercial paper appears to be that a transferor warrants the signatures of all prior parties to be genuine, 8 C. J. § 581, p. 393; Gardner v. Hawes (Tex. Civ. App.) 149 S. W. 273; Wells, Fargo & Co. v. Simpson National Bank, 19 Tex. Civ. App. 636, 47 S. W. 1024; Harrison v. Smith, 2 Willson, Civ. Cas. Ct. App. § 396; therefore, when it appears that the signatures are forgeries, as it is admitted here, then the indorser would become liable under his warranty. But it further appears here that the North Texas National Bank did not stop at a plain indorsing of the instrument, but went further and guaranteed all prior indorsements.

Under such a state of facts, it is our opinion that it would be liable to any person who suffered loss by reason of such indorsement.

Appellant here alleges that it was induced by such indorsement to accept and pay the draft, and we think the circumstances are sufficient to support such allegation.

This being true, then the North Texas National Bank became liable by virtue of its indorsement, and the question of whether or not the maxim recited by the court applied to the facts would not arise.

The facts being agreed to, the judgment of the trial court must be reversed and judgment here rendered that appellant recover of the Republic National Bank & Trust Company in the sum of $2,800, together with interest thereon from October 24, 1928.