The FIRST NATIONAL BANK OF MINE-
OLA, TEXAS, Appellant,

v.

FARMERS & MERCHANTS STATE
BANK OF ATHENS, TEXAS et al.,
Appellees.

No. 279.

Court of Civil Appeals of Texas.

Tyler.

June 1, 1967.

Rehearing Granted June 29, 1967.

Rehearing Denied July 20, 1967.

Ramey, Brelsford, Flock & Devereux, Tom Ramey, Jr., and Michael Hatchell, Tyler, for appellant.

Brundidge, Fountain, Elliott & Churchill, L. E. Elliott, Dallas, for appellees.

DUNAGAN, Chief Justice.

The appellant brought this suit against appellees as the result of the payment by appellant of certain bank money orders issued by it, upon which the payees' names had been signed without authorization and cashed at Farmers & Merchants State Bank, which collected them from appellant through Texas Bank & Trust Company, both banks guaranteeing all prior endorsements. Appellant predicated its recovery upon two theories: (1) a legal cause of ac-

tion based upon appellees' guarantee of all prior endorsements and/or (2) an equitable cause of action for money had and received.

The case was tried before the court upon an agreed statement of facts. After formal hearing and presentation of briefs by both parties, the court entered judgment that appellant take nothing. At the request of appellant, the court made findings of fact in accordance with the stipulation of the parties, and the conclusions of law forming the basis of his judgment.

The judgment provides in part:

"On the 3rd day of June, 1966, this cause came regularly on to be heard; * * * and the court having fully considered the matter and being of the opinion that the law is with the defendants:

"It is accordingly ORDERED, ADJUDGED AND DECREED that Plaintiff, * * * take nothing by its suit and that defendants, * * * go hence without day and recover their costs in this behalf expended.

"The plaintiff in open court excepted to the judgment and gave notice of appeal to the Court of Civil Appeals for the 12th Supreme Judicial District of Texas at Tyler.

"This the 29 day of July, 1966.
                    "Looney E. Lindsey
                           "JUDGE
"APPROVED AS TO FORM:
"Tom B. Ramey, Jr.
"Attorney for Plaintiff

"L. E. Elliott
"Attorney for Defendants

"FILED 1966 JUL 26 AM 8:39
"K. M. ROSS, CLERK
"115TH DISTRICT COURT
"WOOD COUNTY, TEXAS"

A motion for new trial was not required and none was filed. We are therefore to look to the judgment itself to determine the period within which appellant was required to perfect this appeal by the filing of the appeal bond and transcript with the clerk of this court. Hedley Independent School District v. Doneghy, 358 S.W.2d 724, (Tex. Civ.App., Amarillo, 1962, n. w. h.).

The transcript reflects the following:

Request for findings of fact and conclusions of law was filed on July 26, 1966, a receipt thereof acknowledged by the trial judge on July 29, 1966.

Appeal bond was approved and filed by the District Clerk on August 26, 1966.

On September 26, 1966, the transcript was filed in this court.

The last day for the filing of the appeal bond from the date of June 3, 1966, was July 3rd. However, July 3rd being a Sunday and the following day, July 4th, a holiday, gave the appellant through July 5th to timely file its appeal bond.

The last day for the filing of the appeal bond from July 26, 1966, (the date of filing of judgment) was August 25, 1966.

If the judgment was actually signed on July 29, 1966, the appeal bond and transcript were timely filed.

Rule 306a, Texas Rules of Civil Procedure, provides in part:

"Judges are directed to cause, and attorneys and clerks are directed to use their efforts to cause all judgments, decisions, and orders of any kind to be reduced to writing and signed by the trial judge *and the date of signing stated therein*; * * *

"*In determining the periods within which the various steps of an appeal must be taken, the date of rendition of a judgment or order shall be deemed to be the date upon which the written draft thereof was signed by the trial judge as stated therein.* This rule shall apply in determining the time within which to file a motion for new trial, notice of appeal,

appeal bond or affidavit in lieu thereof, bills of exceptions, statements of fact in trial and appellate courts, transcript in appellate court, petition for writ of error if appeal is by writ of error, or other procedure in connection with appeal; * * *" (Emphasis added).

As stated by the Advisory Committee in its comments following Rule 306a, Vernon's Annotated T.R.C.P., the purpose of this rule "is to enable the appellant to ascertain more definitely when the time to perfect an appeal begins to run." We do not feel that the last date shown in the judgment meets this test.

The last date in the judgment is not shown to be the date it was signed nor is there any word used in connection therewith that could reasonably be construed as meaning "signed" or as equivalent thereto. Therefore, we do not believe the notation shown immediately above the judge's signature, "This the 29 day of July, 1966." is in compliance with Rule 306a, nor even in substantial compliance therewith.

As above reflected on the face of the judgment, same was filed on July 26, 1966. In the case of Lung v. Varga, 400 S.W.2d 1, (Tex.Civ.App., Austin, 1966, n. w. h.) with facts similar to those in this case, the court said:

"We find nothing in the rules which give any legal effect to the date on which a judgment is filed with the Court clerk. Of course the date of such filing is evidence that it was rendered and signed prior thereto, but it does not, of itself, have any legal significance. We are bound in this respect by Rule 306a, T.R.C.P."

Under Rule 356, T.R.C.P., an appeal bond must be filed within thirty days after the date of rendition of the judgment or order appealed from. Compliance with this rule has been held to be mandatory and jurisdictional to an appeal. The time limits prescribed cannot be dispensed with or enlarged by this court for any reason. Wash-

ington v. Golden State Mutual Life Insurance Company, 405 S.W.2d 856, (Tex.Civ. App., Houston, 1966, writ of error ref., n. r. e., 408 S.W.2d 227). Under Rule 306a, for the purpose of determining the time for the various steps on appeal, the date of the rendition of judgment or order appealed from is deemed to be the date upon which the written draft is signed by the trial judge "as stated therein." In the present record, there is no express or specific statement in the written draft of the judgment appealed from in respect to the date it was signed. In the absence of such a statement, it must be presumed that the judgment was rendered on the date recited on its face, June 3, 1966—a date more than thirty days prior to the filing of the appeal bond.

In calculating the time from which the various steps of appeal must be taken from the judgment in this case, if it be either the date of June 3, 1966, or the date of its filing, July 26, 1966, a date which was more than thirty days prior to the filing of the appeal bond, appellant's appeal bond was not timely filed.

While the court rules are to be liberally construed to ensure a fair and equitable adjudication of the rights of litigants, still their plain content may not be ignored. Nor do we have power, where questions in respect to our jurisdiction are involved, to waive the requirements of the rules. Rule 306a is in the nature of a proviso or exception to Rule 356. By its terms the presumption there established is applicable only when the date of signing is "stated therein." Heard v. Heard, 305 S.W.2d 231, 235, (Tex. Civ.App., Galveston, 1957, writ ref.).

It is elementary that when our jurisdiction is invoked, the transcript must disclose affirmatively that we have such jurisdiction and that if it does not do so, our duty is to dismiss the appeal. Miller v. Esunas, 401 S.W.2d 150, (Tex.Civ.App., Tyler, 1966, writ ref., n. r. e.).

It appearing from the record that this court is without jurisdiction of this appeal, same is accordingly dismissed.

## ON APPELLANT'S MOTION FOR REHEARING

Earlier in this term we dismissed this appeal because the transcript failed affirmatively to disclose that we had jurisdiction. Appellant later filed a supplemental transcript from which, in connection with the original transcript, it now appears that we do have jurisdiction. Appellant has moved for rehearing and that we set aside our former order dismissing the appeal. The motion is well taken and our former order is set aside and the appeal reinstated.

As stated in the original opinion dismissing this appeal, the appellant predicated its recovery upon two theories:

(1) A legal cause of action based upon appellees' guarantee of all prior endorsements, and/or

(2) An equitable cause of action for money had and received.

Defendants, in addition to their general denial, allege that "Defendants specially deny that the endorsements of said money orders were forged, and in that connection affirmatively aver that the remitter, R. L. Steele, was not indebted to the said Billy Hale or L. A. Murdock, at the time of purchasing said money orders from Plaintiff and did not intend that said payees have any interest in them; that neither of them claim any interest in said money orders; that neither of them have ever demanded payment, and that plaintiff has not paid anything to either of them, and has suffered nothing by reason of said money orders."

## STATEMENT OF FACTS

The facts of this cause were undisputed and were stipulated by all parties as follows:

1. All parties are domestic banking corporations performing a general banking business within the State of Texas; the plaintiff is a corporation organized and existing under and by virtue of the laws of the United States of America, and the defendants are corporations existing and operating under the laws of the State of Texas.

2. On May 31, 1962, plaintiff ("drawer" and "drawee") issued two bank money orders to R. L. Steele, the person who ordered the said money orders, but whose personal checks in payment therefor were returned to plaintiff subsequent to May 31, 1962, marked "insufficient funds," and who has not otherwise paid therefor, which money orders were drawn as follows:

(a) In the amount of $7500.00 payable to Billy Hale.

(b) In the amount of $6500.00 payable to L. A. Murdock.

The names of the said payees on each instrument were supplied by the said R. L. Steele, who was not at any material time an employee of any of the parties to this cause; said instruments were issued on behalf of the plaintiff by Betty Brotherton, a teller in plaintiff's bank; these two instruments were thereupon delivered to the said R. L. Steele in Wood County, Texas.

3. That on the same date, to-wit May 31, 1962, the said bank money orders were presented for payment by R. L. Steele to Farmers & Merchants State Bank at Athens, Texas, endorsed as shown by Exhibits A and B attached to said stipulations, and were paid in full on that date to R. L. Steele by the defendant Farmers & Merchants State Bank at Athens, Texas. The endorsement by R. L. Steele was genuine. The endorsements of the names of Billy Hale and L. A. Murdock on Exhibits A and B, respectively, were not genuine, but were signed by the said R. L. Steele without the authority of the said Hale and Murdock. Said Billy Hale and L. A. Murdock are live persons, but the said R. L. Steele was not indebted to either of them at the time said money orders were purchased by R. L. Steele, and he did not intend that either of them have any interest

in said money orders, and neither of them claim any interest in said money orders, and have never demanded payment of any sum on account thereof and plaintiff has not paid anything to either of them.

4. That the said Farmers & Merchants State Bank at Athens, Texas, endorsed the aforesaid money orders with the letters "P.E.G.," which is the generally recognized and common abbreviation for "prior endorsements guaranteed"; that the said bank money orders were then forwarded to the defendant Texas Bank & Trust Company of Dallas, which in turn credited the defendant Farmers & Merchants State Bank, Athens, Texas, in the face amount of the two money orders, endorsing them with "prior endorsements guaranteed," and again forwarded the said instruments in normal banking channels.

5. That subsequently the instruments were presented to the plaintiff for payment and without notice or knowledge that the parties named therein had not actually endorsed the same, the plaintiff in good faith and in its ordinary course of business paid the face amount of the two money orders to the said defendants.

6. That the plaintiff has received the sum of $3,800.00 from R. L. Steele, the party referred to in the original stipulation, relevant to the transaction in question, and that these payments were received in the amounts of $200.00 per month for a period of time regularly until August, 1965, at which time the payments ceased, and the present whereabouts of R. L. Steele are not known. The sum of $10,200.00 is still outstanding for which the plaintiff has received payment from no source.

7. That the plaintiff nor its employees at any relevant time to this transaction had any business relationship with the said R. L. Steele, except for his purchase of the instruments in question. Neither the plaintiff bank nor Mrs. Betty Brotherton, its employee who issued the bank money orders in question, knew the payees L. A. Murdock or Billy Hale, nor did they know that these payees were not to have an interest in the instruments.

## TRIAL COURT

After considering briefs filed by both parties, the trial court entered a take-nothing judgment against appellant and, thereafter, made the following Conclusions of Law as a basis for the judgment:

"1. Plaintiff, as payor of the money orders, has no privity with, and hence no cause of action on, the restricted endorsement 'Pay to any bank * * * prior endorsements guaranteed.'

"Such endorsements are merely the passport through banking channels (Aetna Casualty & Surety Company v. Corpus Christi National Bank, Tex.Civ. App., 186 S.W.2d 840, w. e. ref. w. m.). The endorsement does not run to a bank which is not a holder in due course but a payor. Republic National Bank of Dallas v. Maryland Casualty Company, Tex.Civ.App., 184 S.W.2d 496; Red Ball Motor Freight, Inc. v. Bailey, Tex.Civ. App., 332 S.W.2d 411 (nre).

"2. Since plaintiff has suffered no loss from the unauthorized endorsement of the names of the payees in the money orders, it has no cause of action because of such unauthorized endorsements.

"3. Since the payees in the money orders have no interest therein and claim none, and plaintiff has lost nothing because of the unauthorized endorsements of the payees' names, but solely because of its acceptance of worthless checks in payment thereof, there is no equity in the plaintiff's plea that defendants have money in their hands equitably belonging to plaintiff, and no cause of action for money had and received is shown.

"4. The money orders were payable to bearer.

"Section 9 of the Negotiable Instruments Act, as amended by Chapter 109,

Acts of 1961st Legislature, p. 211, provides that when an instrument is payable to a living person not intended to have any interest in it and such fact was known to the drawer or was known 'to his employer or other agent who supplies or causes to be inserted the name of such payee,' it is payable to bearer. The Legislature in the emergency clause of the amending statute interpreted its own language to mean that an instrument was payable to bearer when it was payable to a living person not intended to have any interest in it, and such fact is known to 'the *person* who inserts or causes to be inserted the name of such payee.' In view of the issues involved in Liberty Mutual Ins. Co. v. First National Bank of Dallas, 151 Tex. 12, 245 S.W.2d 237, it is clear that the Legislature intended to cover all situations where one person furnished the name of the payee to the actual drawer of the instrument."

Hereafter, all parties will be designated as they were in the trial court. Appellant's first point of error reads as follows:

### "POINT OF ERROR NO. 1

"The trial court erred in rendering a judgment that plaintiff take nothing and in concluding that appellant did not have a cause of action upon the two theories pleaded, i. e. upon the endorsement guarantees and/or for money had and received."

Although the facts of this case are undisputed, we think a proper disposition of the legal questions involved requires a thorough understanding and analysis of (1) the nature of the instruments involved, and (2) the nature of the causes of action asserted by plaintiff.

## NATURE OF THE INSTRUMENTS INVOLVED

The instruments which form the basis of this suit are denominated "bank money orders." Such instruments are essentially the same as the familiar "cashier's check." [1]

Courts which have dealt with "bank money orders" have treated them as instruments "analogous to cashier's checks or bank obligations," 81 Banking Law Journal 669, 674 (1965), and we will treat them accordingly.

A "cashier's check" is a negotiable instrument and, therefore, comes within the provisions of the Negotiable Instruments Act, [2] 10 C.J.S. Bills & Notes § 5, p. 409. On a cashier's check, the issuing bank occupies a dual position; it is both drawer and drawee. Howell v. National Bank of Commerce, 181 S.W.2d 837, (Tex.Civ.App., San Antonio, 1944, writ ref.). An examination of the bank money orders here in question reveals that, just as with the cashier's check, the plaintiff bank was drawer and drawee of both instruments. This fact is significant because plaintiff's legal cause of action upon the endorsement guarantees arises out of its status as drawee.

Upon the face of each bank money order was printed this warning:

"When cashing this money order, require full identification and endorsement in your presence as claims against you, as an endorser, may otherwise result."

## THE NATURE OF PLAINTIFF'S CAUSE OF ACTION

The following stipulated facts are those which give rise to the causes of action

---

1. In Munn's Encyclopedia of Banking & Finance (1962 Revision) a "bank money order" is defined as "a form of money order issued and sold by banks, as distinguished from postal and express money orders. They are practically a modified form of cashier's check, and unlike postal money orders may be endorsed any number of times * * *"

2. See Art. 5932 et seq., Vernon's Ann.Tex. St.

pleaded by plaintiff: The bank money orders were procured by R. L. Steele and made payable to the order of certain named payees, to-wit: Billy Hale and L. A. Murdock. The signatures of these payees were signed without authorization by Steele who then deposited the instruments in the Farmers & Merchants State Bank. This bank endorsed the instruments "PEG." [3] Farmers & Merchants then sent the instruments for collection to the Texas Bank & Trust Company, which endorsed the instruments "Prior Endorsements Guaranteed" and presented the same to the plaintiff which promptly paid them.

In our opinion these facts are sufficient to give plaintiff at least two distinct causes of action: (1) As drawee—a legal cause of action upon defendants' express warranty guaranteeing the genuineness of all prior endorsements; (2) As drawer or drawee—an equitable cause of action for money had and received.

As to plaintiff's legal cause of action, it is generally recognized that an express warranty of prior endorsements gives the drawee bank a cause of action upon the guaranty itself to recover any funds paid in reliance thereon. In Brady on Bank Checks (3rd Ed., 1962), Sec. 15.10, p. 504, it is stated:

> "Because of the questionable state of the law as indicated above, it has become almost universal banking practice, buttressed by Federal Reserve Regulations and various clearing house rules, to require all banks collecting checks and other items to include as a part of their indorsement stamps the words 'Prior indorsements guaranteed.' *Such a legend gives a guaranty against forged or unauthorized indorsements running to subsequent holders and to the drawee or payor bank.* * * * "

The validity of this rule is well established in the case law of this and other jurisdictions, Agricultural Ins. Co. v. North Texas Nat. Bank, 57 S.W.2d 229, (Tex. Civ.App., El Paso, 1933, writ ref.); Guaranty Bond State Bank of Athens v. Fraternal Bank & Trust Co., 68 S.W.2d 305, (Tex.Civ.App., Fort Worth, 1933, writ dism.); Guaranty State Bank & Trust Co. v. Lively, 149 S.W. 211, (Tex.Civ.App., 1912, aff., 108 Tex. 393, 194 S.W. 937); National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354 (1944) 89 L.Ed. 383 (1945); Republic Nat. Bank of Dallas v. Maryland Casualty Co., 184 S.W. 2d 496, (Tex.Civ.App., El Paso, 1944, n. w. h.).

As to plaintiff's equitable cause of action, it is provided in Art. 5932, Sec. 23, V.A. T.S., known as the "Negotiable Instruments Act," as follows:

> "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, * * "

By virtue of this provision, it is well established that a collecting bank does not acquire title to a forged instrument, and that it holds for the rightful owner any funds paid in satisfaction of the forged instrument. It is held that a drawer or drawee, as the case may be, may recover such funds from the collecting bank in an equitable action for money had and received, Fidelity & Deposit Co. of Maryland v. Fort Worth Nat. Bank, 65 S.W.2d 276, (Tex.Com.App., 1933); Greenville Nat. Exchange Bank v. Nussbaum, 154 S.W.2d 672, (Tex.Civ.App., Waco, 1941, writ ref., w. m.); Red Ball Motor Freight, Inc. v. Bailey, 332 S.W.2d 411, (Tex.Civ.App., Amarillo, 1959, writ ref., n. r. e.); First

---

**3.** It is agreed by the parties that this abbreviation is generally recognized as the common abbreviation for "Prior Endorsements Guaranteed."

Nat. Bank of Kansas City v. Produce Exchange Bank of Kansas City, 338 Mo. 91, 89 S.W.2d 33, (1935); Labor Bank & Trust Co. v. Adams, Tex.Civ.App., 23 S.W.2d 814, (Waco, 1930, no writ); Morris Plan Bank of Fort Worth v. Continental Nat. Bank of Fort Worth, 155 S.W.2d 407, (Tex.Civ. App., Fort Worth, 1941, n. w. h.).

While fine distinctions may be drawn as to the theory upon which plaintiff's cause of action is based, such distinctions would appear to be academic, because plaintiff sued upon alternative theories, i. e. upon the express warranty and/or for money had and received. The overwhelming weight of the above authorities clearly establishes the validity, in one form or another, of the cause of action pleaded by plaintiff. Significantly, this cause of action has been recognized in cases involving cashier's checks or instruments in which the bank was both drawer and drawee. Farmers' Bank & Trust Co. v. Farmers' State Bank of Brookport, 148 Ark. 599, 231 S.W. 7, (1921); Citizens Fidelity Bank & Trust Co. v. Liberty Nat. Bank & Trust Co., 257 S.W.2d 590, (Ky.1953); Yatesville Banking Co. v. Fourth Nat. Bank, 10 Ga.App. 1, 72 S.E. 528, (1911); City Bank v. Hamilton Nat. Bank of Washington, 71 App.D.C., 225, 108 F.2d 588, (1939). Under the facts in this case and from the authorities above cited, plaintiff's Point of Error No. 1 should be sustained unless such causes of action are precluded by any of the grounds stated in the trial court's Conclusions of Law which we will hereinafter discuss.

Plaintiff by its remaining Points of Error complains that the trial court erred (1) in concluding that plaintiff was not in privity with defendants which precluded plaintiff from suing upon defendants' guarantee of all prior endorsements of said money orders; (2) in concluding that plaintiff had not sustained a loss from the payment of the bank money orders, and, therefore the plaintiff had no cause of action upon defendants' endorsement guarantees; (3) in concluding that the bank money orders were bearer instruments, which were properly negotiable by delivery; (4) in concluding that plaintiff has lost nothing because of the unauthorized endorsements of the payees' names, and therefore there was no equity in plaintiff's plea for money had and received.

These remaining points will be considered, discussed and disposed of together.

■ The trial court first concluded that plaintiff was not in privity with the endorsement "Pay any bank * * * prior endorsements guaranteed," and, therefore, that plaintiff had no cause of action thereon. In considering this conclusion of the trial court, it must be kept in mind that plaintiff was both drawer and drawee of the instruments in question, and a study of the history of this particular endorsement shows that it was specifically designed to run in favor of the drawee bank as an assurance that the instrument had been paid to the proper payee, 8 Zollman, Banks & Banking, Sec. 5631–5636; Brady on Bank Checks, (3rd Ed., 1962), Sec. 8.18.

In support of his conclusion, the trial court cited Republic Nat. Bank of Dallas v. Maryland Casualty Co., supra. In that case, an employee of Gulf Insurance Company procured checks from the company, forged signatures of the payees and cashed them at various places in Dallas. The checks were drawn upon the National Bank of Commerce and were presented to the drawee through the Republic National Bank of Dallas and the First National Bank in Dallas, both of which banks guaranteed all prior endorsements. The plaintiff, as insurer of the drawee bank, paid the total amount of the checks to Gulf Insurance Company and received an assignment of all causes of action upon the checks in favor of Gulf and the National Bank of Commerce. Suit was brought against the collecting banks upon their endorsements, and judgment was rendered against them in the trial court. On appeal, the Court of Civil Appeals concluded that the plaintiff

could not prevail against the collecting banks on its assignment *from the drawer* of the checks. In this regard, the court held:

"Gulf (the drawer) was not the payee of these checks. It was the drawer and a third party was payee. As drawer, the endorsers owed it no duty by virtue of their endorsement. * * *"

The court went on, however, to affirm the judgment of the trial court on the theory that plaintiff could prevail against the collecting banks by virtue of its assignment *from the drawee*. As to the collecting banks' guarantee on all prior endorsements, the court specifically held that *there was privity between the collecting banks and the drawee bank.*

In particular, the court held:

"In our opinion the only theory upon which the judgment entered can be sustained is that by the assignment from the drawee banks plaintiffs acquired the right to enforce the liability created by the endorsers of the collecting banks to the drawee. The collecting banks guaranteed in writing the genuineness of the prior endorsements. In reliance thereon the drawees paid out their funds and charged same to the account of the drawer.

\* \* \* \* \* \*

" * * * It is true there was no privity between the drawer and the endorsers as to the endorsements. *Privity there was between the drawees and the collecting banks by virtue of their respective endorsements.* * * *

\* \* \* \* \* \*

"The liability of the drawee to the drawer and the liability of the endorsers to the drawee are separate and independent matters. * * *

"In our opinion, the assignments evidenced the clear intention to preserve to the plaintiffs the liability of the endorsing banks. We can see no reason why this should not be done. The release by

plaintiffs of their rights against the drawees, to our minds, afforded a good and lawful consideration for the transfer by the drawees of their causes of action against the collecting banks guaranteeing the endorsement of the payees.

"A drawee bank paying a check to one not having title thereto, pays out its own funds and not those of the drawer. In case of one presenting the check endorsing same in the manner the checks are here endorsed by the collecting banks, such collecting banks are liable to the drawee. American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W. 2d 1034." (Emphasis added).

■ It is clear from the above authorities that privity does exist between the collecting banks and the drawee bank on a specific guarantee of prior endorsements. It is in the capacity of *drawee* in the case at bar that plaintiff brought its legal cause of action upon defendants' endorsements.

We hold that privity did exist between plaintiff and the defendant banks.

In the case of Red Ball Motor Freight, Inc. v. Bailey, *supra*, a suit was instituted against a collecting bank of a drawer of checks which were cashed upon forged endorsement. The court held that the plaintiff, as drawer, did not have a cause of action upon the endorsements of the intermediary collecting banks, but did have a cause of action for money had and received. This holding is correct as far as the rights of a drawer are concerned. However, since the drawee was not a party to the suit, we do not consider that the Red Ball case is authority that there is no privity between a drawee and the collecting banks.

The trial court has further concluded that plaintiff did not sustain any "loss" from the unauthorized endorsements of the payees' names on the bank money orders, and, therefore, that plaintiff had no cause of action arising from its payment of the instruments. Plaintiff's legal cause of action is not one for compensatory damages, but

it is an action to recover a specific fund paid to defendants in reliance upon their affirmative guarantees. The plaintiff argues that "If Farmers & Merchants had determined the genuineness of the payees' signatures, as they were required to do, they would have ascertained that their endorsements were unauthorized; they would not have cashed the money orders; *and they would not have received payment from the Plaintiff*." Farmers & Merchants State Bank did not do this, however, and instead, they paid the instruments to the one who had no legal right thereto. It then proceeded to and did collect the money orders from the plaintiff by guaranteeing (along with Texas Bank & Trust Co.) that the payees' endorsements were genuine. These guarantees prompted plaintiff to part with its funds in satisfaction of the money orders because they were express representations that the instruments had been paid to the proper parties. Up until this payment, plaintiff had parted with nothing of value. It is the payment of the money orders to defendants, who had no legal right to collect them, which constitutes plaintiff's loss, and it is clear that defendants' guarantees were designed to cause this payment.

The defendants argue that "Equity recognizes that he who trusts most must suffer most. If plaintiff bank trusted Steele to give it valuable checks for the money orders in question, it certainly must bear the loss resulting from those acts. It cannot shift that loss to another, who had nothing to do with the acceptance of the checks. Plaintiff's loss results from the trust that the plaintiff bank put in Steele; and it must bear the resulting loss."

It is not disputed that the plaintiff has sustained a loss from the transaction in this case. The only question is what caused the loss. It is rather clear that the loss was caused by the combination of (a) the return of Steele's checks marked "NSF," and (b) the action of the Farmers & Merchants State Bank in improperly paying the money orders. It is true that, if Steele's checks had

been good, the loss would not have resulted. But it is equally true that, if the Athens bank had not wrongfully cashed the money orders, plaintiff would not have paid out its funds and no loss would have resulted. It is the payment of this fund which constitutes the loss sued for, and it is clear that this payment was the direct result of the action of said bank. Therefore, it cannot be said that plaintiffs' acceptance of Steele's checks was the sole cause of the loss in question.

The situation presented here is simply another of the "fictitious payee" cases which affirmatively recognize the validity of the cause of action asserted here, all of which expressly reject the "no loss" argument advanced by defendants. A comparison between the case at bar and other "fictitious payee" cases clearly supports this view. Labor Bank & Trust Co. v. Adams, supra; Morris Plan Bank of Fort Worth v. Continental Nat. Bank of Fort Worth, supra; First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, 299 S.W. 856, (Tex.Com.App., 1927); American Express Co. v. People's Sav. Bank, 192 Iowa 366, 181 N.W. 701; First National City Bank of New York v. Manufacturers Trust Co., 39 Misc.2d 428, 240 N.Y.S.2d 669, (1963); and Mohawk National Bank of Schenectady, N. Y. v. Citizens Trust Co., 38 Misc.2d 222, 237 N.Y.S. 2d 956, 958. In the latter case, the bank issued its *cashier's check* in exchange for a forged and worthless promissory note. The court held that the fact that the note was a forgery had no bearing on the liability of the collecting bank, since the latter's liability stemmed solely "from its breach of guaranty."

This precise point was thoroughly discussed in City Bank v. Hamilton Nat. Bank of Washington, supra. In that case, the Hamilton National Bank took two promissory notes allegedly signed by Arthur Berman and wife. The bank then issued and delivered to Berman its cashier's checks payable to the order of Berman and wife

for the amount of the promissory notes. These checks were delivered by Berman to the City Bank for deposit to his account. The checks were endorsed by City Bank "prior endorsements guaranteed" and were collected by the City Bank from the Hamilton bank to the clearing house. It was later revealed that the signature of Mrs. Berman on the promissory notes was a forgery, and that her name had also been forged to the cashier's checks when they were cashed at the City Bank. Thereafter, Arthur Berman died and his wife refused to pay the balance due on the promissory notes. Therefore, the Hamilton bank sued the City Bank to collect upon the latter's endorsement guarantee. The City Bank interposed precisely the same defense urged by defendants in this case, and the Court of Appeals disposed of the argument as follows:

"Nor do we think there is any greater merit in City Bank's other defense. The ground relied upon is that Hamilton Bank's loss flowed from its own act in lending money on promissory notes with the forged signatures of one of the makers. On this theory, City Bank says that, in guaranteeing the indorsements on the cashier's checks, it did nothing to lessen the value of the promissory notes; * * *. Hamilton Bank, in issuing the checks, made them payable to both husand and wife and thereby indicated that they were the persons intended to receive the proceeds. It parted with none of its money when it accepted the notes. Its loss occurred when it paid the checks upon the guaranty of City Bank of the validity of the indorsements of Bernice Berman. * * * The loss sued on occurred as the result of reliance by Hamilton Bank on the guaranty of City Bank that the indorsements were valid. In this aspect, City Bank received from Hamilton Bank money to which it was not entitled. Upon discovery, Hamilton Bank demanded return, less the amount which had been restored by the forger. The rule in these circumstances is that the

bank which has drawn the cashier's check on itself may recover from the collecting bank when the indorsement has been forged. * * *"

Another case which is of particular interest is the case of American Express Co. v. People's Sav. Bank, supra, because the plaintiff in that case had issued drafts *in exchange for NSF checks* exactly as in the case at bar. The court held that the acceptance of the worthless checks was a "mere incident of the case," and that the plaintiff, as drawee, was entitled to recover from the collecting banks, which had cashed the drafts upon a forged instrument, "without pleading and proving a special damage." The court held:

"If a drawee pays an instrument to one who claims under a forged or unauthorized indorsement, he can recover back even from a holder in due course. The holder did not own or secure title to the instrument that was paid. The payment was due to another. Suppose Crozer had indorsed in the same manner and presented the drafts to the drawee and received payment thereon. Plaintiff would be in the same position as it is now as to Crozer. It could sue him for money had and received. The defendant bank, if title failed, is in the same position, and is liable for money had and received. * * *"

To reach the result contended for by defendants in this case, therefore, this court would have to hold contrary to this established line of authority.

In this case plaintiff did not part with its money upon accepting Steele's check. Its loss occurred when it paid the bank money orders upon the guaranty of the defendant banks of the validity of the endorsements of the payees. Therefore, the loss sued on occurred as the result of reliance by plaintiff on the guaranty of the defendant banks that the endorsements of payees were valid.

If the endorsements of the payees on said money orders had been genuine, of course,

the defendants would not be liable to plaintiff. In that event, plaintiff would have to look to Steele only to recoup its loss, because its loss would have occurred solely by its acceptance of Steele's worthless check.

■ The trial court also concluded that no cause of action existed on the defendants' endorsement guarantees, because the money orders were bearer instruments, which lawfully could be negotiated by the possessor upon delivery. The basis for the conclusion is Sec. 9 of Art. 5932, V.A.T.S., as amended in 1961, which reads as follows:

"Sec. 9. The instrument is payable to bearer:

\* \* \* \* \* \*

"(3) When it is payable to the order of a fictitious or nonexisting person or to a living person not intended to have any interest in it and such fact was known to the drawer or was known to his employee or other agent who supplies or causes to be inserted the name of such payee; \* \* \*"

It is stipulated that R. L. Steele was the only person who intended the payees of the bank money orders not to have any interest in the instruments. It is further stipulated that Steele was not the drawer of the instruments, nor was he an employee of the plaintiff. Therefore, since Steele was the person who intended the payees not to have an interest in the money orders, to make the bills bearer instruments under the above statute, the trial court evidently concluded that Steele was an "agent" of the drawer bank. An examination of the history of Sec. 9(3), however, reveals this conclusion is untenable.

Prior to 1961, Sec. 9(3) read as follows:

"Sec. 9. The instrument is payable to bearer:

\* \* \* \* \* \*

"(3) When it is payable to the order of a fictitious or nonexisting person, and

such fact was known to the person making it so payable."

This section was amended to its present form in 1961 to reconcile conflicting decisions construing the section. The conflict centered upon a construction of the phrase "person making it so payable." One line of cases held that the "person making it so payable" was the person who actually signed the instrument. Another line of cases held that the "person making it so payable" included the employees or agents of the actual drawer, even though such agents or employees merely supplied the name of the fictitious payee and did not actually sign the instrument. See Red Ball Motor Freight, Inc. v. Bailey, supra; Dorsey v. Houston National Bank, 338 S.W.2d 540, (Tex.Civ.App., Waco, 1960, writ ref.); Liberty Mutual Ins. Co. v. First Nat. Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237, (1952). We wish to point out, however, that none of the conflicting cases considered an extension of the requisite knowledge to persons other than employees or agents of the actual drawer. This is the area in which there was division of authority giving rise to the 1961 amendment. There are no cases that we can find and none have been cited to us construing Section 9(3) as amended, but we believe that the agreed facts, in light of the statute's wording, clearly show that R. L. Steele, in procuring the money orders, was not an "agent" of the plaintiff.

■ Steele was not an agent of the plaintiff in a legal sense. In construing the statutes, it is well established that every word or phrase in the statute is presumed to have been used intentionally with a meaning and purpose, and when a word has a settled legal significance, it is presumed to have been used in that sense. 53 Tex. Jur.2d 271, Sec. 181. In law, an agent is defined as "one who is authorized by another to transact business or manage some affair for him, and to render to him an accounting of such transaction," 2 Tex.Jur.2d 436, Sec. 1. In regard to the creation of

agency, the general rule is well stated in 3 Am.Jur.2d 428, Agency, Sec. 17, where it is said:

"* * * As between the parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent shall act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them."

No agency relationship can be said to exist unless the actions of the alleged agent are within the control of the principal, Bertrand v. Mutual Motor Co., 38 S.W.2d 417, (Tex.Civ.App., Eastland, 1931, writ ref.). The only contact which R. L. Steele had with the plaintiff bank in this case was to purchase the bank money orders. From this single contact, it is difficult to see how there could have been a meeting of the minds between plaintiff and Steele sufficient to create an agency. Nowhere do the facts show that Steele was authorized, as a result of this single transaction, to act for the bank, nor is there any evidence showing that Steele's actions were under the control of the plaintiff. From the facts as herein reflected, it is our opinion that the dealings between Steele and the plaintiff did not create a legal principal-agent relationship.

Without any doubt, R. L. Steele cannot under the facts be said to have been an employee or representative of the plaintiff in the conduct of its business affairs, and consequently Steele was not an "agent" under Section 9 (3) of Art. 5932.

As to plaintiff's equitable cause of action for money had and received, the trial court in its Conclusion No. 3 found that plaintiff "lost nothing" because of the unauthorized endorsements and its loss actually resulted from its acceptance of "worthless checks" from R. L. Steele. For this reason, the trial court concluded that there was "no equity in plaintiff's plea" for money had and received.

This conclusion is essentially the same as the court's Conclusion No. 2 which we have hereinabove discussed. However, this conclusion was obviously made specifically in connection with plaintiff's equitable cause of action for money had and received.

The question of "loss" as it relates to a claim (like plaintiff's) for money had and received was discussed in First Nat. Bank of Kansas City v. Produce Exchange Bank of Kansas City, supra, and decided adversely to this conclusion of the trial court. In that case, the bookkeeper of a corporation gave corporation checks to the plaintiff bank in exchange for the bank's cashier's checks payable to designated payee. He cashed these checks after forging the payee's endorsements. Plaintiff sued to recover the funds paid to defendant as the collecting bank. Plaintiff had been reimbursed for its loss from its insurance company, and defendant pleaded that plaintiff could not maintain its suit because plaintiff's loss "was not sustained by reason of the issuance" of the cashier's checks. In disposing of this contention, the court held:

"* * * '* * * The suit is not one for damages but to recover money the defendant bank had and received, but to which it never had title and for which it gave plaintiff no consideration. The plaintiff, the moment it paid out the money on the forged indorsements had a cause of action against defendant, which arose immediately. The suit is to recover the money, and is not dependent upon whether a loss will eventually accrue to plaintiff, nor is the suit based upon the checks * * *'."

To the same effect is American Express Co. v. People's Sav. Bank, supra.

As the above authorities illustrate, plaintiff's plea for money had and received is not based upon the cashier's checks, nor is it based upon the checks given by Steele. It is an action to recover a specific fund paid by plaintiff to defendants, which fund the latter had no right to receive. The fact that defendants would have been entitled to the fund *if* the payees' endorsements had been genuine has no effect upon the plea for money had and received under the facts of *this* case. Commercial Credit Corporation v. Citizens National Bank, 144 S.E.2d 784, 788, (West.Va.Sup., 1965).

■ Plaintiff's cause of action cannot be eliminated merely because it may have other remedies to reimburse its loss, Liberty Mutual Ins. Co. v. First Nat. Bank in Dallas, supra.

■ The only other contention advanced is that the court would look to the emergency clause of the amendment to determine the intention of the Legislature in passing the 1961 amendment. Apparently, the court is being asked to disregard the actual language of the statute itself, as well as the title and preamble, and to consider *only* the emergency clause in determining the legislative intent. In the case of Texas Employers' Insurance Association v. Shirey, 391 S.W.2d 75, (Tex.Civ.App., Austin, 1965, n. w. h.) where the same contention was made as is here made, the court said:

"We overrule this point. The intention of the Legislature is to be derived from the language used by it and not by what language we may believe it intended to use. An emergency clause in a statute may not be invoked to create an ambiguity in a statute or to control its plain meaning or purpose. * * *"

See Missouri-Kansas-Texas R. Co. of Texas v. Thomason, 280 S.W. 325, (Tex. Civ.App., Austin, 1926, writ ref.); Statutes, 53 Tex.Jur., Sec. 170, p. 249.

Moreover, the emergency clause involved here does not in itself support the conclusion suggested by defendants. A careful reading of the clause in the light of the language of the statute demonstrates that the legislative intent was not to extend the requisite knowledge beyond the drawer, his employee or "other agent." It is manifestly clear that the Legislature did not undertake to extend the effect of such knowledge to "any person" as suggested by defendants. This view finds support in the trial court's Conclusions of Law as well as defendants' oral and written presentation wherein it is recognized that the amendment was enacted specifically to clarify the law regarding the "faithless employee" situation such as presented in Liberty Mutual Ins. Co. v. First Nat. Bank in Dallas, supra. The "confusion and division of authority" had arisen by reason of holdings in various other dishonest employee cases. Dorsey v. Houston National Bank, supra; Red Ball Motor Freight, Inc. v. Bailey, supra; Republic Nat. Bank of Dallas v. Maryland Casualty Co., supra.

For all the reasons above stated, the judgment of the trial court is reversed and judgment is here rendered for appellant in the sum of $10,200.00, and such judgment shall bear interest at the rate of six percent per annum from the 29th day of July, 1966, the date of the judgment in the trial court, until paid.